UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| TONYA M. JOY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 2:20-cv-00407-NT |
| | ) |
| HOST INTERNATIONAL INC., | ) |
| d/b/a LINDA BEAN'S MAINE LOBSTER CAFE | ) |
| | ) |
|     Defendant. | ) |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure and Local Rule 56, Defendant Host International, Inc. ("Host"), through its undersigned counsel, respectfully moves for summary judgment on all claims in Plaintiff Tonya Joy's Complaint [ECF No. 1-1]. The grounds for the Motion are set forth more fully in the incorporated Memorandum of Law and supported by Defendant's Statement of Material Facts [ECF No. 70].[1]

## INTRODUCTION

In her Complaint, Plaintiff asserts two counts against her former employer, Host, related to a request for intermittent leave to allegedly care for her mother. Plaintiff claims that Host retaliated against her for inquiring about taking FMLA leave in violation of "Maine FMLA" under 26 M.R.S. §§ 843-848[2] (Count I) as well as "Maine FMLA interference" under 26 M.R.S. §§ 83-848 (Count II). Plaintiff also alleges that Host violated the "Maine Personnel File Law" under 26 M.R.S. § 631 *et seq*. (Count III).

---

[1] This Memorandum will cite to Defendant's Statement of Material Facts [ECF No. 70] ("SMF") and the stipulated Summary Judgment Record [ECF No. 64] throughout.

[2] Plaintiff's Complaint repeatedly refers to "Maine FMLA" while citing to the Maine Family Medical Leave Requirements ("MFMLR"), 26 M.R.S. §§ 844 *et seq*. Host will refer to the statute as MFMLR in this Memorandum.

1

The undisputed facts show that Plaintiff started working for Host as a part-time server on February 6, 2019. SMF ¶ 5. After becoming eligible for MFMLR in February 2020, Plaintiff, requested intermittent leave to care for her mother on February 25, 2020. SMF ¶ 84. By Plaintiff's own admission, this was her first request to Host for MFMLR leave. *Id*. Upon receipt of the request, the undisputed record shows that Host promptly sent her the required paperwork, which is standard for all Host employees. SMF ¶¶ 88-91. The leave package included, among other forms, a certification form for Plaintiff's mother's physician to complete because Plaintiff sought leave to care for her mother. SMF ¶¶ 89-90. Plaintiff received these forms on March 3, 2020. SMF ¶ 91. However, Plaintiff refused to complete the necessary paperwork. SMF ¶ 92. In fact, not only did Plaintiff decline to provide a medical certification, but she also refused to complete any of the leave paperwork. SMF ¶¶ 92-97. Host could not approve leave without Plaintiff's cooperation in completing the necessary forms. SMF ¶ 90.

At approximately the same time, in March of 2020, the COVID-19 global pandemic wreaked havoc on the travel and dining industries. As a result, Host furloughed nearly every employee at the Portland Jetport — approximately 85 out of 89 total employees. SMF ¶¶ 101-102. When Host began to recall employees in the second half of 2020, it did so based on seniority and the skillset needed for each venue. SMF ¶ 106. Plaintiff, who had only started working at Host in February of 2019, was near the bottom of the seniority order. *Id*. Many of the other servers and bartenders at Linda Bean's had worked for Host for more than 20 years. *Id*. All employees not recalled by the end of October 2020 were laid off. SMF ¶ 107. In all, Host laid off approximately 40 employees, including Plaintiff in October of 2020. *Id*. The unprecedented business conditions operating airport food and beverage establishments during a global pandemic prompted Host to take the actions it did, which impacted nearly every single one of its employees. In no way did

Plaintiff's request for leave, which she never even completed, influence Host's decisions. Thus, Plaintiff's claims must fail.

Plaintiff also improperly requests compensatory and punitive damages in Counts I and II of her Complaint. However, the MFMLR does not allow for compensatory or punitive damages. *See* 26 M.R.S. § 848. Therefore, summary judgment is also appropriate as to that aspect of Plaintiff's claims.

As to Plaintiff's claim concerning the production of her personnel file, the undisputed facts show that Host never denied Plaintiff access to review her personnel file. SMF ¶ 99. Instead, Plaintiff's request was deficient, and Host fulfilled all its duties and obligations under M.R.S. § 631 *et seq*.

## ARGUMENT

**A.      Standard For Granting Summary Judgment**

Summary judgment is appropriate when the relevant pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). For summary judgment purposes, "genuine" means that "a reasonable jury could resolve the point in favor of the nonmoving party." A fact is "material" if its "existence or nonexistence has the potential to change the outcome of the case." *Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011).

The nonmoving party must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment should enter. *See Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986); *McCrory v. Spigel*, 260 F.3d 27, 31 (1st Cir. 2001); *see also Henry v. United Bank*, 686 F.3d 50, 54 (1st Cir. 2012).

Although the Court must view the evidence in the light most favorable to the non-moving party, "[a] properly supported summary judgment motion cannot be defeated by relying upon conclusory allegations, improbable inferences, acrimonious invective, or rank speculation." *Ahern v. Shinseki*, 629 F.3d 49, 54 (1st Cir. 2010). Similarly, evidence that is "merely colorable, or is not significantly probative" will not defeat summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). Even when cases involve elusive concepts such as motive or intent, summary judgment is appropriate "if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Benoit v. Technical Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir. 2003). Finally, "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *See Anderson*, 477 U.S. at 252; *Murray*, 789 F.3d at 25.

### B. Host Did Not Interfere With Plaintiff's MFMLR Rights[3]

To allege an FMLA interference claim — and a MFMLR interference claim — Plaintiff must establish: (1) that she qualified as an eligible employee[4]; (2) that Host is an employer covered

---

[3] The First Circuit "has written that the same analysis governs both the FMLA and MFMLA." *Cote v. T-Mobile USA, Inc.*, 168 F. Supp. 3d 313, 331 (D. Me. 2016) citing *Colburn v. Parker Hannfin/Nichols Portland Div.*, 429 F.3d 325, 329 n.1 (1st Cir. 2005); *see also Morin v. Hannaford Bros. Co., LLC*, 1:17-cv-50-GZS, 2018 WL 2746570, at *13 n.14 (D. Me. June 7, 2018) ("The Court applies the same analysis to the FMLA and the MFMLR claims and does not otherwise differentiate between the statutes."); *Brunelle v. Cytec Plastics, Inc.*, 225 F. Supp. 2d 67, 76 (D. Me. 2002) (treating the "FMLA analysis as dispositive of the merits of the MFMLR claims.").

[4] In relevant part, the MFMLR entitles "[e]very employee who has been employed by the same employer for 12 consecutive months" up to "10 work weeks of family medical leave in any 2 years unless employed at a permanent work site with fewer than 15 employees. Me. Rev. Stat. tit. 26, § 844(1). The FMLA adds an additional layer of eligibility defining "eligible employee" as being employed by the same employer for 12 months *and* working at least 1,250 hours in the prior 12-month period. 29 U.S.C. §2611(2)(A). The MFMLR only requires 12 months of employment. 26 M.R.S.A. § 844(1). Additionally, "Family medical leave" means leave requested by an employee for "A. Serious health condition of the employee; . . . D. A child, domestic partner's child, grandchild, domestic partner's grandchild, parent, domestic partner, sibling or spouse with a serious health condition . . ." 26 M.R.S.A. § 843(4). The

by the MFMLR; (3) that she qualified for benefits; (4) that she provided notice to Host; and (5) that Host denied her the benefits to which she was entitled. *Morin v. Hannaford Bros. Co., LLC*, No. 1:17-CV-50-GZS, 2018 WL 2746570, at *16 (D. Me. June 7, 2018); *Carrero-Ojeda v. Autoridad de Energia Electrica*, 755 F.3d 711, 722 n.8 (1st Cir. 2014). It is well-established that if an individual is not eligible for FMLA leave, then he or she cannot maintain a cause of action for FMLA retaliation or interference. *See. e.g.*, *Tucker v. Town of Scarborough*, 2:19-cv-00213-GZS, 2020 WL 3271936, at *5 (D. Me. June 17, 2020) ("To prevail on a theory of FMLA interference, an employee must 'establish that the employer denied her benefits to which the FMLA entitled her.'") (quoting *Wheeler v. Pioneer Developmental Servs., Inc.*, 349 F. Supp. 2d 158, 164 (D. Mass. 2004); *Gudava v. Ne. Hosp. Corp.*, 440 F. Supp. 3d 49, 60 (D. Mass. 2020) ("A prima facie case of interference in violation of the FMLA requires a plaintiff to show that her employer denied her FMLA benefits to which she was entitled . . . the FMLA does not provide relief unless an employee is prejudiced by any employer's interference.") (internal citations omitted); *Cotto v. Municipality of Aibonito*, 2012 WL 1110177, at *5 (D.P.R. Apr. 2, 2012) ("It is axiomatic that a person must be an eligible employee within the meaning of the FMLA to be offered a remedy under the FMLA."); *David v. Michigan Bell*, 543 F.3d 345, 353 (6th Cir. 2008) ("[plaintiff's] FMLA retaliation claim must fail as a matter of law because she was not eligible for FMLA benefits . . ."); *Giddens v. UPS Supply Chain Soluations*, 70 F. Supp. 3d 705, 719 (D. Del. 2014) (holding that if plaintiff was not entitled to FMLA leave then he "cannot make out a claim for FMLA interference or retaliation."); *Campetti v. Career Education Corp.*, 2003 WL 21961438,

---

employer "may require certification from a physician to verify the amount of leave requested by the employee." *Id.* at § 844(1)(B). Such leave may be unpaid and may be taken intermittently. *Id.* at § 844(2-3).

at *13 (E.D. Pa. June 25, 2003) ("Plaintiff cannot sustain a FMLA 'interference' claim because he was never denied any FMLA leave.").

Plaintiff's interference claim fails because she cannot meet four of the five elements of a *prima facie* case.[5] First, Plaintiff was not qualified for FMLA or MFMLR leave at the time of the claimed interference (November and December 2019), because she had not worked the requisite 1,250 hours in a 12-month period, and she had not worked for Host for 12 months. SMF ¶¶ 5; 89. Under the MFMLR, Plaintiff was not eligible for leave until February 6, 2020 at the earliest – 12 months after she started working for Host. 26 M.R.S. §844 (1). Second, prior to February 25, 2020, Plaintiff never requested FMLA or MFMLR leave. SMF ¶ 84. Third, Host never denied Plaintiff MFMLR benefits. SMF ¶¶ 54 and 88. Rather, Host promptly sent Plaintiff the appropriate notice and health care provider certification forms in March 2020 after Plaintiff stated she needed intermittent leave. SMF ¶ 91. Plaintiff never completed or returned the forms. SMF ¶ 92. Plaintiff never asked a health care provider to complete the certification. SMF ¶ 92; 94-97. It was Plaintiff's choice not to follow through with her request for leave. Host did not deny anything to Plaintiff. Therefore, Plaintiff's claim fails as a matter of law.

Plaintiff appears to believe that Host should have surmised that she needed leave (despite not being eligible for any) in November and December of 2019 when she allegedly told Ms. Szeluga and Mr. Rappazzo that she needed advance notice of scheduling so she could coordinate care for her mother. SMF ¶ 52-55. Yet, all Plaintiff asked for was additional notice of her work schedule, **not** time off. *Id*. Plaintiff has admitted that her first – and only – request for intermittent leave did not occur until February of 2020. SMF ¶¶ 54 and 84. Prior to then, Host had no way of knowing that Plaintiff was seeking FMLA or MFMLR leave. The case law in this Circuit and

---

[5] Host concedes that it is an employer covered by the MFMLR, but Plaintiff cannot meet elements Nos. 1, 3, 4, and 5.

others is clear, however, that an employer is not expected to be clairvoyant. *See e.g.*, *Terry v. SimplexGrinnell,* 2013 WL 1332240 (D. Mass. March 28, 2013) ("The fourth element of a *prima face* case requires that [plaintiff] establish that she gave her employer appropriate notice. It is undisputed that Terry never requested FMLA leave prior to her termination and Terry has not cited any authority to support her contention that Simplex was under some sort of obligation to discern her need for FMLA leave."); *Leeds v. BAE Sys.*, 2010 WL 3855220 (D.N.H. Sep. 28, 2010) (no authority to support plaintiff's theory that his employer was required to somehow ascertain his need for FMLA leave); *Brunelle c. Cytec Plastics, Inc.*, 225 F. Supp. 2d 67, 78 (D. Me. 2002) (quoting *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 980 (5th Cir. 1998) (While an employer's duty to inquire [into whether leave qualifies under the FMLA] may be predicated on statements made by the employee, the employer is not required to be clairvoyant.")).

Assuming *arguendo* that Plaintiff's alleged conversations with Mr. Rappazzo and Ms. Szeluga were sufficient notice of Plaintiff's need for time off to care for her mother, Plaintiff was **not** eligible for leave under the MFMLR at that time, because she had not worked for Host for 12 consecutive months (nor had she worked the requisite number of hours under the FMLA). SMF ¶¶ 5; 89; 26 M.R.S. §844(1); 29 U.S.C. §2611(2)(A).[6] Thus, there were no leave rights for Host to interfere with. For this reason, Plaintiff's claim fails on its face.

In fact, the United States Supreme Court made clear in the seminal case, *Ragsdale v. Wolverine World Wide, Inc*, 535 U.S. 81, 89 (2002), that the enforcement provision of FMLA, 29 U.S.C. § 2617 "provides no relief" for notice violations or interference under §2615 "**unless the employee has been prejudiced by the violation**." (emphasis added). In other words, "[t]he

---

[6] Importantly, Plaintiff admits that whenever she needed time off, Host allowed her to take off that time. SMF ¶ 36. Accordingly, even if Plaintiff was eligible for leave, it is absurd for her to claim that Host denied or interfered with her rights.

7

remedy is tailored to the harm suffered." *Id.* Where "a plaintiff is not harmed by an FMLA violation, Section 2617 provides no remedy, and summary judgment is appropriate." *Campbell v. Jefferson Univ. Physicians*, 22 F. Supp. 3d 478, 486 (E.D. Pa. 2014) (quoting *Armfield v. Key Plastics, LLC,* 2011 WL 3022253, at *7 (N.D .Ind. July 22, 2011)); *see also, e.g., Hilborn v. Cordaro,* 2007 WL 2903453, at *7 (M.D. Pa. Sept. 28, 2007) (collecting cases for the proposition that "courts have determined that an employer's failure to [comply with FMLA provisions], without a showing of actual harm, is insufficient to state an FMLA interference claim"). Similarly, in *Bellone v. Southwick-Tolland Regional School Dist.*, the First Circuit explained that "[l]ate or inadequate [FMLA] notices, however, **are not actionable unless they harm the employee**." 748 F.3d 418, 423 (1st Cir. 2014) (emphasis added). Plaintiff suffered no harm here. By the plain language of the MFMLR, 26 M.R.S. §844(1), Plaintiff was not eligible for leave at the time of her discussions with Ms. Szeluga and Mr. Rappazzo in November and December of 2019. SMF ¶¶ 53-54; 63-65. Because Plaintiff had no statutory right with which Host could interfere, her claim for interference lacks any semblance of merit.

When Plaintiff potentially become eligible for MFLMR leave in February of 2020[7], she failed to complete the necessary paperwork to obtain leave — a requirement for every Host employee. SMF ¶ 90. Plaintiff's failure to complete the certification forms is also fatal to her claim. MFMLR unambiguously states that employers "may require certification from a physician to verify the amount of leave requested by the employee . . ." § 844(1)(B). This certification requirement mirrors the FMLA, which states that "[a]n employer may require that a request for leave [to care for a parent with a serious health condition] be supported by a certification issued

---

[7] As Ms. Szeluga indicated on the forms, Plaintiff had not worked the requisite hours to be eligible for FMLA leave. SMF ¶ 89. The MFMLR, however, provides benefits based on the length of employment and not the number of hours worked. 26 M.R.S. §844(1).

by the health care provider of the eligible employee or . . . or parent of the employee" including "(1) the date on which the serious health condition commenced; (2) the probable duration of the condition; (3) the appropriate medical facts within the knowledge of the health care provider regarding the condition . . ." 29 U.S.C. § 2613.

The forms Host provided to Plaintiff — standard forms it uses for all employees — complies with the certification process permitted by both the MFMLR and FMLA. SMF ¶ 89-90; 26 M.R.S. §844(1)(B); 29 U.S.C. §2613. Plaintiff's refusal to provide certification from her mother's physician warrants summary judgment. *See e.g.*, *Surprise v. Innovation Grp., Inc.*, 925 F. Supp. 2d 134, 146 (D. Mass. 2013) ("An employer has the right under FMLA to require that the employee support his request for leave with medical certification issued by the employee's health care provider. 29 U.S.C. § 2613(a); 29 C.F.R. 825.305(a). The regulations clearly provide that '[a] certification that is not returned to the employer is not considered incomplete or insufficient, but constitutes a failure to provide certification.' 29 C.F.R. § 825.305(c). When an employee fails to provide certification, 'the employer may deny the taking of FMLA leave.' 29 C.F.R. § 825.305(d)."); *Bailey v. Dal Glob. Servs. LLC*, No. 1:17-CV-00490-LEW, 2019 WL 3414386, at *8 (D. Me. July 29, 2019) (granting defendant summary judgment on MFMLR interference claim and holding that "[t]he responsibility was upon [plaintiff] to provide notice and, if requested, certification to verify the amount of leave requested."); *Carpenter v. Permanente*, 2006 WL 2794787, at *12 (N.D. Ohio Sept. 27, 2006) ("An employee simply is not eligible for leave under the FMLA if he does not submit the proper FMLA medical certification to his employer as requested."); *Hansen v. Fincantieri Marine Grp., LLC,* 2013 WL 2918329, at *3 (E.D. Wis. June 14, 2013) ("An employer need not simply accept an employee's word that he is entitled to take FMLA leave.").

9

It is undisputed that when Plaintiff made her first and only request for leave on February 25, 2020, Host promptly confirmed the type of leave requested and immediately sent her the necessary certification forms. SMF ¶¶ 85-88. Plaintiff received the paperwork via FedEx on March 3, 2020. SMF ¶ 91. Plaintiff elected not to complete any of the forms. SMF ¶¶ 92; 97. Plaintiff admitted that she did not even attempt to have her mother's physician (the same PCP as her own) complete the certification form. SMF ¶¶ 94-95. Instead, the next day, March 4, 2020, Plaintiff executed an authorization to permit her current counsel to obtain her personnel records. SMF ¶ 98. Rather than returning the forms to obtain the leave she allegedly needed, Plaintiff retained counsel and never followed through with her leave request. SMF ¶ 97. Because Plaintiff failed to return the leave forms, she was not entitled to any leave once she completed 12 months of employment and, thus, it is a factual and legal impossibility for Host to have interfered with Plaintiff's rights in any way. Accordingly, summary judgment should be entered in favor of Host.

**C.   Host Did Not Retaliate Against Plaintiff**

The *McDonnell Douglas* burden-shifting framework applies to claims that an employer discriminated or retaliated against an employee for availing herself of FMLA-protected rights. *See Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 160 (1st Cir. 1998) (holding same). The *Hodgens* Court set forth the procedures the Court must follow in applying *McDonnell Douglas* as follows:

> Under [the *McDonnell Douglas*] framework, a plaintiff employee must carry the initial burden of coming forward with sufficient evidence to establish a *prima facie* case of discrimination or retaliation. If he does so, then the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's [termination], sufficient to raise a genuine issue of fact as to whether it discriminated against the employee.... If the employer's evidence creates a genuine issue of fact, the presumption of discrimination drops from the case, and the plaintiff retains the ultimate burden of showing that the employer's stated reason for terminating him was in fact a pretext for retaliating against him for having taken protected FMLA leave [or other unlawful discrimination].

*Hodgens*, 144 F.3d at 160-161.

To make out a prima facie case of retaliation under the MFMLR or FMLA, Plaintiff must establish that "(1) he availed himself of a protected right[8] [...]; (2) he was adversely affected by an employment decision; (3) there is a causal connection between the employee's protected activity and the employer's adverse employment action." *Id.* at 161; *see also Greenwald v. Tambrands, Inc.*, 366 F.Supp.2d 195, 202-203 (D. Me. 2005). Plaintiff cannot establish the first or third elements of a *prima facie* case.

Here, Plaintiff did not request leave to care for her mother until February 25, 2020. SMF ¶ 84. Host sent her the appropriate documentation on March 2, 2020 and she refused to complete it. SMF ¶ 92. This failure alone is fatal to Plaintiff's claim because she was required to present evidence that her mother's medical condition warranted statutorily protected leave. *See e.g. Duhy v. Concord Gen. Mut. Ins. Co.*, 2009 WL 1650024, *6 (D.N.H. June 10, 2009) ("[A]n employee's inability to present evidence that her medical problem constitutes a serious health condition renders the resulting leave unprotected under the FMLA, and is fatal to the required prima facie showing.") (citing *Greenwald v. Tambrands, Inc.*, 366 F. Supp. 2d 195, 203 (D. Me. 2005)).

Just as Plaintiff's interference claim fails because she never requested leave (nor was she even eligible for it), it is bedrock principle that a plaintiff who is not entitled to FMLA leave cannot maintain an FMLA (or MFMLR) retaliation claim as a matter of law either. *See Santana-Colon v. Houghton Mifflin Harcourt Pub. Co.*, 81 F. Supp. 3d 129, 133 (D.P.R. 2014) (explaining that the First Circuit "has recognized that an employee could not successfully argue to have been discharged for taking leave if such leave was not a right protected by the FMLA"); *Carrero–Ojeda*

---

[8] Under the MFMLR, the relevant "protected right" at issue is up to 10 work weeks of unpaid "[i]ntermittent or reduced leave schedule family medical leave." 26 M.R.S. §844.

*v. Autoridad de Energía Eléctrica,* 755 F.3d 711, 719 (1st Cir. 2014) (pointing out that to make out a prima facie case of FMLA retaliation, an employee must show that he availed himself of a protected FMLA right); *Duhy*, 2009 WL 1650024, *7 (rejecting plaintiff's proposition that a plaintiff who is not entitled to FMLA leave can maintain an FMLA retaliation claim) (citing *Greenwald*, 366 F. Supp. 2d at 203); *Schmittou v. Wal-Mart Stores, Inc.*, 2003 WL 22075763, at *7 (D. Minn. Aug. 22, 2003) (plaintiff "was not eligible for leave under the FMLA , so it was impossible for her to engage in any activity protected by the statute"); *Rogers v. Bell Helicopter Textron, Inc.*, 2000 WL 1175647, at *3 (N.D. Tex. Aug. 17, 2000) (same)); *Smith v. Mayo Clinic*, 158 F. Supp. 3d 764, 773 (D. Minn. 2016) ("A plaintiff's failure to show that she was eligible for FMLA leave is fatal to her FMLA claim.") (citing *Dalton v. ManorCare of West Des Moines Iowa, LLC*, 782 F.3d 955, 959-60 (8th Cir. 2015)).

Even assuming, *arguendo,* that Plaintiff's retaliation claim was not barred due to her failure to avail herself of a protected right (which it is), she still fails to make out a claim of retaliation because she cannot demonstrate a causal connection between the assertion of a protected right and any adverse employment action. Here, Plaintiff alleges that Host retaliated against her for inquiring about MFMLR leave when it (i) stopped scheduling her, (ii) lied to the Maine Department of Labor ("MDOL") to deny her unemployment benefits, and (iii) refused to reinstate her when the restaurants at the Jetport reopened. [ECF No. 1-1 at ¶ 42]. All these allegations are baseless.

Plaintiff cannot demonstrate that Host simply stopped scheduling her. Instead, Plaintiff limited her availability to Fridays and Saturdays, repeatedly called out of work for scheduled shifts, and took multiple extended vacations. SMF ¶¶ 44; 49; 58-63; 65-68; 71; 73; 74. In addition, Host experienced a significant decline in business from October 2019 through March 2020 and Host was not able to give Plaintiff hours based on her limited schedule. SMF ¶¶ 79-80.

12

Similarly, Plaintiff cannot demonstrate that Host lied to the MDOL, to deny her unemployment benefits, by stating that the reduction in her hours was due to her lack of availability. [ECF No. 1-1 at ¶ 28]. As explained above, it was Plaintiff who limited her availability and that led to a reduction in her hours. SMF ¶¶ 65-68. Moreover, the MDOL awarded Plaintiff unemployment benefits, which she applied for immediately upon returning from a vacation to Florida. SMF ¶ 78. Thus, Plaintiff cannot base her claim on the denial of unemployment benefits.

Finally, Plaintiff cannot demonstrate that her furlough in March 2020 or her termination in October 2020 were in any way related to her unfulfilled request for leave. Unbeknownst to the world, the COVID-19 pandemic was about to shut down almost all aspects of life just a few weeks after Plaintiff requested leave. In March 2020, almost all air travel and dining had come to a halt.[9] As a result, Host furloughed nearly every employee at the Portland Jetport — approximately 85 out of 89 employees in total. SMF ¶¶ 101-102. Plaintiff was not singled out in any way. When Host began to recall employees in the second half of 2020, it did so based on seniority and the skillset needed for each venue. SMF ¶ 106. Plaintiff, who had only started working at Host in February of 2019, was near the bottom of the seniority order. *Id*. Many of the other servers and bartenders at Linda Bean's had worked for Host for more than 20 years. *Id*. To date, Linda Bean's is still not open to full capacity. SMF ¶ 107. Since Plaintiff was not recalled, Host laid off Plaintiff in October of 2020 along with approximately 40 other employees.[10] *Id*. After the layoff, Plaintiff

---

[9] According to the United States Transportation Security Administration, it screened 2.4 million passengers in U.S airports on March 31, 2019. On March 31, 2020, however, it screened just 146,000 passengers – **a 94 percent decrease** due to COVID-19. *See* "How coronavirus grounded the airline industry," *The Washington Post*, Apr. 1, 2020 (https://www.washingtonpost.com/graphics/2020/business/coronavirus-airline-industry-collapse/). Locally, the Portland International Jetport saw its passenger counts plummet from 133,338 total passengers in February 2020 to 81,205 in March 2020 to only 5,460 passengers in April 2020 – a 96 percent decrease in just two months due to the pandemic. (https://portlandjetport.org/airport-statistics).

[10] The FMLA and the MFMLR are clear that "[i]f an employee is laid off during the course of taking FMLA leave and [her] employment is terminated, the employer's responsibility to continue FMLA leave, maintain ... benefits[,] and restore the employee cease at the time the employee is laid off." *Carrero-Ojeda v. Autoridad de Energía Eléctrica*,

13

never reapplied for employment with Host. *Id*. The actions Host took had absolutely nothing to do with Plaintiff's request for leave, which as far as Host knew, Plaintiff had decided not to pursue because she <u>never</u> returned the paperwork. Plaintiff's retaliation claim is completely baseless.

D.   **Host's Furlough and Later Termination of Plaintiff Were Not Pretextual**

The airline and dining industries quite literally shutting down due to a global pandemic certainly satisfies Host's *McDonnel-Douglas* burden of "articulating a legitimate, non-retaliatory reason for the adverse employment action." *Kempton v. Delhaize America Shared Services Group LLC*, 2:14-cv-00494-JDL, 2016 WL 1069647, at *7 (D. Me. March 17, 2016). Thus, Plaintiff must prove that her furlough and subsequent termination were pretextual. *Hodgens*, 144 F.3d at 160-161. A "nonmoving plaintiff may demonstrate pretext either indirectly by showing that the employer's stated reasons for its adverse action were not credible, or directly by showing that that action was more likely motivated by a discriminatory reason." *Id.* at 168. In other words, Plaintiff must show that "[defendant's proffered legitimate reasons for terminating her were actually a 'sham intended to cover up [its] real motive.'" *Kempton*, 2016 WL 1069647, at *12 (quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 9 (1st Cir. 1990). In the leave context, although an employee "may not be penalized for exercising her rights under the [FMLA], an employee may nevertheless be discharged . . . for independent reasons during or after her taking of FMLA leave." *Carrero-Ojeda*, 755 F.3d at 719.

Plaintiff cannot come close to meeting her burden here. Plaintiff initially became eligible for MFMLR leave on February 6, 2020 — 12 months after the start of her employment at Host. SMF ¶ 5. Plaintiff first requested leave on February 25, 2020. SMF ¶ 84. After Ms. Szeluga

---

755 F.3d 711, 722 (1st Cir. 2014) (quoting 29 C.F.R. § 825.216(a)(1)); *see also Germanowski v. Harris*, 854 F.3d 68, 72 (1st Cir. 2017) (explaining that because FMLA benefits terminate upon discharge, "[plaintiff's] interference claim necessarily fails if [she] was properly discharged."); 26 M.R.S. §845(1).

confirmed the type of leave requested, she sent Plaintiff Host's standard paperwork, including medical certification forms, on March 2, 2020, which Plaintiff received on March 3, 2020. SMF ¶¶ 88; 91. Plaintiff elected not to complete any of these standard leave forms. SMF ¶ 92. At the time, Host could not have known that Plaintiff would not follow through with her leave request. Host also could not have predicted that while Plaintiff sat on the leave paperwork, the COVID-19 pandemic would grind air travel and indoor dining to a halt. *See supra* note 8. By the end of March 2020, Host furloughed 94 percent of all its staff at the Portland Jetport – including all servers and bartenders at Linda Bean's. SMF ¶¶ 101-102. Plaintiff's pending leave request had absolutely nothing to do with her being furloughed. The entire Portland Jetport, and Host's business, essentially ceased overnight due to the COVID-19 pandemic. SMF ¶¶ 79-80. Furloughing Plaintiff was not pretext. It was a rational business decision based on the unprecedented global pandemic that impacted nearly every one of Host's employees.

Although Host hoped and expected "the mass furlough to be temporary," the impact of COVID-19 still lingered in October of 2020 as it does today. SMF ¶ 107. Host set a uniform policy for its Portland Jetport workforce that those not recalled by the end of October 2020 would be laid off. *Id*. At the time, Host's food and beverage locations were not operating at full capacity – nor are they doing so today. *Id*. Host made its recall determinations based on seniority and the skillset needed for each venue. SMF ¶ 106. Plaintiff, with approximately one year of experience at Host, was at the bottom of the seniority order. *Id*. Many of the recalled employees had 20 years of experience at Host. *Id*. Plaintiff's uncompleted leave request played no role in the recall selection process. In fact, by that point, Host had no idea if Plaintiff still needed the leave, because she had not completed the certification paperwork. Ultimately, Host recalled only about half of its Portland workforce by October 2020 and laid off everyone else. SMF ¶ 107. A mass furlough and layoff

process necessitated by a once in a lifetime global pandemic is certainly not pretext for separating Plaintiff's employment due to her leave request.

As this Court has long held, "the issue in assessing pretext in a *McDonnell Douglas* burden-shifting case is not whether the reason for firing the plaintiff was real, but rather, whether the defendant *believed* it was real." *Kempton*, 2016 WL 1069647, at *13 (citing *Smith v. Heritage Salmon, Inc.*, 180 F. Supp. 2d 208, 218 (D. Me. 2002)) (emphasis in original). Here, Host's reasonings for Plaintiff's furlough and termination were based on real, rational business needs while operating during a pandemic. The fact that these employment actions impacted nearly every other Jetport employee certainly proves that Host's rationale was not discriminatory. Plaintiff cannot meet her burden of proving pretext and her claim fails.

Similarly, the regular winter seasonal drop in business, the onset of the COVID-19 pandemic, as well as Plaintiff's self-limited availability, frequent callouts, and multiple vacations all contributed to Plaintiff's reduction in hours during the first quarter of 2020. These legitimate business reasons are certainly not pretext for discrimination or retaliation. Plaintiff knew as of August 2019 that Host used fewer servers in the winter months. SMF ¶ 69. Mr. Falconeri told Plaintiff that in the winter the restaurant needed fewer servers "depending on the numbers." *Id*. Here, the numbers showed a steep decline in revenue in the final 12 weeks of 2019 and an even more dramatic drop in business in the first quarter of 2020. SMF ¶¶ 79-80. From October of 2019 to mid-January of 2020, Linda Bean's revenue dropped dramatically. *Id.* There simply was not a need for additional servers in the first quarter of 2020 due to the drop in business and the need to give priority to full-time staff. SMF ¶ 67. Moreover, Plaintiff limited her own availability to two days per week with a strictly limited time frame in those two days. SMF ¶ 66. Even with limited availability, Host continued to schedule Plaintiff for shifts which she repeatedly missed or called

out to say she was not available to work. After returning from her Jamaican vacation on November 9, 2019 until leaving for her Florida vacation om January 11, 2019, Plaintiff called out of or missed 12 scheduled shifts. SMF ¶¶ 49-50, 58-63, 71-73. Host did not stop scheduling Plaintiff, she just stopped coming to work. After calling out of her scheduled New Year's Eve shift and taking a Florida vacation from January 11 to January 19, 2019, Plaintiff immediately applied for unemployment benefits upon returning to Maine.[11] SMF ¶ 78. Based on Plaintiff's conduct, it is clear she had no intention of working.[12] Soon thereafter, the travel and hospitality industries shut down due to the COVID-19 pandemic. Plaintiff's reduced hours was not due to any discriminatory or retaliatory motives. The undisputed revenue drop, Plaintiff's limited availability, and Plaintiff's repeated callouts, combined with an impending global pandemic, led to her reduction in hours. These legitimate business factors are not pretextual.

### E. Plaintiff's Request for Her Personnel File Was Deficient

Plaintiff's request for her personnel file, through her current counsel, only sought "a complete copy of all documents that are considered part of her personnel file. . ." When this Court analyzed an identical request by Plaintiff's same counsel in *White v. Hewlett Packard Enterprise Company*, No. 2:17-cv-00491-DBH, Doc. 85 (D. Me. June 11, 2019), it determined that requests for a "copy" of a personnel file were insufficient under Maine law. This Court explained,

> There may be an issue whether White properly requested access. The statute directs that "[t]he reviews and copying must take place at the location where the personnel files are maintained and during normal office hours unless, at the employer's discretion, a more convenient time and location for the employee are arranged." *Id.* In a 1993 Maine Superior Court case, the plaintiff's lawyer had "requested that he be sent a copy of plaintiff's personnel file." *Richardson v. Town of Rangeley*, 1993 Me. Super. LEXIS 109, at *8. Justice Alexander stated that "[t]he law only requires that a person seeking access to their personnel file be given access to that file at the appropriate personnel office. There is no evidence that the defendants ever denied

---

[11] As set forth above, Plaintiff's allegation that Host lied to the MDOL, by saying that Plaintiff's reduction in hours was due to her lack of availability, is demonstrably false. SMF ¶¶ 49-50, 58-63, 66, 71-73.
[12] As of July 19, 2021, Plaintiff had still not returned to full-time employment for any employer. SMF ¶ 108.

17

plaintiff access to his personnel file at defendants' offices as required by 26 M.R.S.A. § 631." *Id.*

The same logic applies here. Plaintiff <u>never</u> asked to review her personnel file. SMF ¶ 99. Host never denied Plaintiff access to review personnel file. SMF ¶ 99. The statute provides only for the opportunity to "review and copy" the file "at the location where the personnel files are maintained." 26 M.R.S.A. § 631. The statue does not mandate that an employer deliver a copy to Plaintiff directly. Thus, Host did not violate the statute and Plaintiff's claim must fail.

**F.     Compensatory and Punitive Damages Are Not Available Under The MFMLR**

Plaintiff seeks, among other relief, compensatory and punitive damages under Counts I and II of her Complaint alleging MFMLR retaliation and interference. [ECF No. 1-1 at ¶ 48 and WHEREFORE clause; Count II at ¶ 56 and WHEREFORE clause.] However, the MFMLR does not provide for compensatory or punitive damages. *See* 26 M.R.S. § 848. The statute only permits equitable relief for lost wages, liquidated damages, and attorney's fee. *Id.* Thus, compensatory and punitive damages are simply unavailable to Plaintiff under the MFMLR just like the FMLA. *See e.g.*, *Lufkin v. Eastern Maine Medical Center*, 401 F. Supp. 2d 145, 146 (D. Me. 2005) ("the enumerated remedies do not include either non-economic compensatory or punitive damages."); *Nevada Dep't of Human Res. V. Hibbs*, 538 U.S. 721, 739-40 (2003) ("the cause of action under the FMLA is a restricted one: The damages recoverable are strictly defined."); *Brunelle v. Cyro Industries*, 234 F. Supp. 2d 26, 27 n.2 (D. Me. 2002) ("It also appears that an employee is not entitled to recover emotional distress or punitive damages for an FMLA violation.").

## CONCLUSION

For the reasons set forth above, the Court should grant summary judgment in Host's favor on all claims in Plaintiff's Complaint.

Dated:  February 7, 2022	Respectfully submitted,

	*/s/ Melinda J. Caterine*
	Melinda J. Caterine (Bar No. 007129)
	Steven J. Silver (Bar No. 005946)
	LITTLER MENDELSON, P.C.
	One Monument Square, Suite 600
	Portland, ME 04101
	Phone:  207.774.6001
	mcaterine@littler.com
	ssilver@littler.com

	*Attorney for Defendants*
	Host International, Inc.

## CERTIFICATE OF SERVICE

I, Melinda J. Caterine, hereby certify that I electronically filed the foregoing document using the CM/ECF system on the date noted below, which will send notification of such filing to the following:

Laura H. White, Esq.
Danielle M. Quinlan, Esq.
White & Quinlan, LLC
62 Portland Road, Suite 21
Kennebunk, ME 04043
lwhite@whiteandquinlan.com
dquinlan@whiteandquinlan.com


Dated:  February 7, 2022                     Respectfully submitted,

/s/ Melinda J. Caterine
Melinda J. Caterine (Bar No. 007129)
Steven J. Silver (Bar No. 005946)
LITTLER MENDELSON, P.C.
One Monument Square, Suite 600
Portland, ME 04101
Phone:  207.774.6001
mcaterine@littler.com
ssilver@littler.com

*Attorney for Defendants*
Host International, Inc.