### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | |
|---|---|
| TONYA M. JOY, )<br><br>Plaintiff, )<br><br>v. )<br><br>HOST INTERNATIONAL INC., )<br>d/b/a LINDA BEAN'S MAINE LOBSTER )<br>CAFE )<br><br>Defendant. ) | Civil Action No. <u>**2:20-cv-00407-NT**</u> |

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Tonya Joy, by and through undersigned counsel, hereby opposes Defendant Host International Inc., d/b/a Linda Bean's Maine Lobster Café ("Host") Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. In support of its opposition, Plaintiff submits the memorandum of law incorporated herein, Plaintiff's Response to Defendant's Statement of Material Facts with Additional Statements of Fact. Defendant's Motion must be denied for all of the reasons that follow.

### FACTS

The factual background supporting Plaintiff's Opposition to Defendant's Motion for Summary Judgment is set forth in the accompanying Additional Statement of Material Facts, which is hereby incorporated by reference. Fed. R. Civ. P. 10(c).

### ARGUMENT

### I.    SUMMARY JUDGMENT STANDARD

Consistent with the "conventional summary judgment praxis," the Court views the facts of this case in the light most favorable to Plaintiff. *Carmichael v. Verso Paper, LLC*, 679 F. Supp. 2d 109, n.2 (D. Me. 2010). All reasonable inferences should be resolved in Ms. Joy's favor. *Id.* at 122. At the summary judgment stage, the nonmovant is "entitled 'to have the credibility of her evidence as forecast assumed, her versions of all that is in [genuine] dispute accepted, [and] all internal conflicts in [the evidence] resolved favorably to her" *Blanchard v. Peerless Ins. Co.*, 958 F.2d 483, 489 (1st Cir. 1992). Because the Court should not engage in credibility assessments, "[d]eterminations of motive and intent, particularly in discrimination cases, are questions better suited for the jury." *Dominguez-Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 432-33 (1st Cir. 2000).

For purposes of assessing whether a genuine issue of material fact exists, the court considers whether "the evidence about the fact is such that a reasonable jury could return a verdict in favor of the nonmoving party." *Duckworth v. Mid-State Machine Products*, 736 F. Supp. 2d 278, 282 (D. Me. 2010) (quoting *Buchanan v. Maine*, 469 F.3d 158, 166 (1st Cir. 2004)). A material fact is one that has the potential to affect the outcome of the suit under the applicable law. *Id.*

## II.     Family Medical Leave Act

Under the FMLA and the circumstances of this case, Defendant's failure to provide notice is considered a denial, restraint, or interference with the right to take leave, on a continuous or intermittent basis. *See Brown v. E. Me. Med. Ctr.*, 2006 U.S. Dist. LEXIS 50593, *5-6 (D. Me. Jul. 18, 2006) (quoting *Ragsdale v. Wolverine World*

*Wide, Inc.*, 535 U.S. 81, 89-90 (2002)). Employees who are denied entitlement under FMLA can sue employers under an interference theory, a retaliation theory, or both. *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159-60 (1st Cir. 1998); *Kenney v. Bethany Home of R.I.*, C.A. No. 09-cv-289-ML, 2011 U.S. Dist. LEXIS 49620, 2011 WL 1770537, at *2 (D.R.I. May 9, 2011). An interference claim arises when an employer prevents its employee from taking FMLA leave; retaliation occurs when the employee suffers an adverse employment action for invoking FMLA rights. *See* 29 U.S.C. § 2615(a)(1)-(2); *Hodgens,* 144 F.3d at 159; *Carrero-Ojeda v. Autoridad de Energia Electrica,* 870 F. Supp. 2d 313, 321 (D.P.R. 2012).

This case alleges that Joy was denied intermittent FMLA during her employment despite putting her employer on actual notice of her caretaker obligations preventing her from work on occasion, which Host human resources agrees triggered FMLA and should have been referred to human resources to process. This case also alleges when she experienced FMLA retaliation by way of a reduction in shifts, disciplinary action,  and was ultimately removed from the schedule despite sufficient notice to her employer that she couldn't work some shifts due to her caretaker responsibilities and had difficulty arranging to work for shifts with, at times, a couple hours' notice to at most two days' notice.

### A. Notice

With respect to Joy's communication with Rappazzo it is clear Joy availed herself to rights under FMLA regardless of whether she used precise language requesting the leave. *See Chase v. United States Postal Serv.*, 843 F.3d 553, 557 (1st

Cir. 2016). (See PASMF 36, 40, 44, 52, 63, 65). Defendant argues that a narrow interpretation of the law and the record would not allow a trier of fact to reasonably infer that Joy had inquired about taking FMLA to care for her mother's serious medical condition throughout the fall and winter of 2019 despite admissions from Host Human Resources that Joy's communication should have triggered the manager to report it to her and the managers express understanding that employees making such communication are entitled to FMLA and should be referred to human resources. (PASMF 62, 69, 11, 12).

Relevant statutory language and case law, however, does not support Defendant's narrow interpretation. To the contrary, caselaw has held that: "In order to invoke the protections of the FMLA, "[t]he employee need not expressly assert rights under the FMLA or even mention the FMLA but may only state that leave was needed." *Davis v. Walpole Inc.*, 2006 WL 2965284 at *11. "It should be noted that protected activity, such as a complaint of discrimination, need not always be accompanied by 'magic words'..." *Sitar v. Indiana DOT*, 344 F.3d 720, 727 (7th Cir. 2003). "To trigger the rights guaranteed under the FMLA, an employee need not actually mention the FMLA by name, the critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Holpp v. Integrated Communs., Corp.*, 2005 U.S. Dist. LEXIS 35557, Civ. No. 03-3383, 2005 WL 3479682, at *5 (D.N.J. December 20, 2005) (quoting *Brohm v. Jh Props.*, 149 F.3d 517, 523 (6th Cir. 1998)) (emphasis added). Moreover, 29 C.F.R. § 825.302(c) requires an employer

to "inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken." 29 C.F.R. § 825.302(c) (2006).

Here, Plaintiff had communications with three layers of management with respect to her inability to work on occasion because of needing to care for her mother's serious medical condition. (PASMF 40, 44, 52, 63-67). Host understood Joy's need for time off was because of her caregiver duties (PASMF 35). Each member of management understood she was relating her inability to work the shift to these factors, but still failed to provide her with the benefits she was entitled to. Moreover, the need to take leave cannot be used "as a negative factor in employment actions." 29 C.F.R. § 825.220(c), but she was completely removed from the schedule because of her need for leave. Here, it is undisputed that as of February 2020 Joy was qualified for FML under state law. The record also supports that she put her employer on notice of her need for intermittent leave, but was not provided that leave, and instead not scheduled for any further shifts.

### B. FMLA INTERFERENCE

To recover on an FMLA interference claim, Plaintiff must demonstrate she was denied substantive FMLA rights to which she was entitled. *Colburn v. Parker Hannifin/Nichols Portland Div.*, 429 F.3d 325, 331(1st Cir. 2005). To make out an interference claim, Plaintiff must establish that: (1) that she is an "eligible employee" under FMLA; (2) that she worked for an employer under FMLA; (3) that she was entitled to leave under FMLA; (4) that she gave adequate notice to her

employer of her intention to take leave; and (5) that her employer denied her benefits to which she was entitled by FMLA. *Surprise v. Innovation Grp., Inc.*, 925 F. Supp. 2d 134, 145 (D. Mass. 2013). Employer motive plays no role in a "claim for substantive denial of benefits," and the employee need not show retaliatory or discriminatory animus. *Colburn,* 429 F.3d at 332; *Carrero-Ojeda*, 870 F. Supp. 2d at 320; Gonzalez-Rodriguez v. Potter, 605 F. Supp. 2d 349, 370 (D.P.R. 2009).

"Employers are required to provide employees with individual notices concerning their FMLA rights at various times." Bellone, 915 F. Supp. 2d at 193 (citing 29 C.F.R. § 825.300(b)-(d)). As relevant here, absent extenuating circumstances, an employer must notify an employee of the employee's eligibility to take FMLA leave within five business days of: (1) an employee's request for FMLA leave; or (2) when "the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason." 29 C.F.R. § 825.300(b)(1). *Bostick v. Smith & Wesson Corp.*, Civil Action No. 3:15-cv-30193-MGM, 2017 U.S. Dist. LEXIS 75105, at *14 n.5 (D. Mass. Apr. 25, 2017)

Ms. Joy specifically requested FMLA paperwork on February 25, 2020 and received correspondence from HMS regarding her FMLA request on March 3, 2020. The Notice of Eligibility form provided to Ms. Joy indicated that she had satisfied the 12 months of service requirement and that she may qualify for state FMLA leave depending on the medical documentation supporting the leave. As a precursor to intermittent FMLA leave, HMS requested access to her mother's complete medical record related to her serious medical condition(s).  Ms. Joy believed this

request to be invasive and unnecessary, given the limitations on what kind of information was permissible for HMS to request from her mother's medical provider under 29 CFR § 825.306 and therefore did not submit the paperwork. (PASMF 105-108). As of March 1, 2020 (the date the form was completed), Host admits that Joy was eligible for state FMLA leave contingent upon the supplemental documentation it requested. However, the information requested is beyond the scope of information that is permissible for an employer to request.

Further, Department of Labor regulations specifically provide that "Reducing hours available to work in order to avoid employee eligibility" is interference. *Domenichetti v. Premier Educ. Grp., LP*, Civil Action No. 12-cv-11311-IT, 2015 U.S. Dist. LEXIS 374, at *20 (D. Mass. Jan. 5, 2015), citing 29 C.F.R. §§ 825.220(b). The line between interference and discrimination is not always a bright one. See Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 330 (1st Cir. 2005), ("[T]here is no clear demarcation in § 2615 between what is 'interference' and what is 'discrimination,' and the terms overlap in some situations."). Here the evidence supports that Host management (Rappazzo) had knowledge of Joy's ongoing need to provide care for her mother that, at times, would cause her to need time off from work with no indication of that condition changing. He subsequently began to reduce her schedule thus making it so that she would never work the requisite hours in the 12 month period.

## C.  FMLA RETALIATION

FMLA retaliation claims impose liability on employers that act against employees specifically because those employees invoked their FMLA rights." *Carrero-Ojeda*, 870 F. Supp. 2d at 321. "[A] crucial component of an FMLA retaliation claim is some animus or retaliatory motive on the part of the plaintiff's employer that is connected to protected conduct." Pagan-Colon v. Walgreens of San Patricio, Inc., 697 F.3d 1, 8 (1st Cir. 2012); Hodgens, 144 F.3d at 165. Here, Joy was subjected to a continuous pattern of hostility from Director Rappazzo for needing time off, as well as her manager Falconeri who issued disciplinary action for failing to go to a shift she was not scheduled for.

Here, Host argues that Ms. Joy could not have been retaliated against for requesting FMLA leave because she was not eligible for FMLA leave. However, when the First Circuit examined this very issue in *Reid v. Centric Consulting, LLC*, it agreed with Tenth Circuit reasoning that an employee who was ineligible for FMLA leave could maintain a cause of action alleging FMLA retaliation:

> We are not convinced that an employee who is ineligible for FMLA leave can never bring a retaliation claim. There are many reasons why an employee will not know until inquiring whether he is eligible for any particular right available under the Act. The statute prohibits employer interference with both the exercise of rights provided under the FMLA and "the attempt to exercise any [such] right." 29 U.S.C. § 2615(a)(1). There is no requirement that the attempt be successful. It would seem too, that firing an employee for asking would also frustrate the aims of the Act even if the inquiring employee turns out to be ineligible. Such an "ask at your peril" approach could deter employees, including eligible employees uncertain of the extent of their rights, from taking the first step necessary to exercise their rights.
> *Wilkins v. Packerware Corp.*, 260 Fed. Appx. 98, 102-103 (10th Cir. 2008) (surveying cases and describing the issue as "contestable").

*See Reid v. Centric Consulting, LLC*, No. 15-14048-JGD, 2018 U.S. Dist. LEXIS

53196, at *10-11 (D. Mass. Mar. 29, 2018. The First Circuit declined to hold, as a

matter of law, that an ineligible employee cannot bring a retaliation claim. *Id.* at

*12.

The First Circuit also dealt with this issue in dicta in *McArdle v. Town of*

*Dracut/Dracut Public Sch.*, 732 F.3d 29 (1st Cir. 2013):

> We are not convinced that an employee who is ineligible for
> FMLA leave can never bring a retaliation claim. There are many
> reasons why an employee will not know until inquiring whether he is
> eligible for any particular right available under the Act. The statute
> prohibits employer interference with both the exercise of rights
> provided under the FMLA and 'the attempt to exercise any [such]
> right.' 29 U.S.C. § 2615(a)(1). There is no requirement that the attempt
> be successful. It would seem too, that firing an employee for asking
> would also frustrate the aims of the Act even if the inquiring employee
> turns out to be ineligible. Such an 'ask at your peril' approach could
> deter employees, including eligible employees uncertain of the extent
> of their rights, from taking the first step necessary to exercise their
> rights.732 F.3d at 36.

In *Gomes v. House*, 504 F. Supp. 3d 15 (D.R.I. 2020) the court reviewed

*McArdle* and held that Plaintiff could proceed with her FMLA retaliation

claim despite the determination she was ineligible because she established

that she "availed" herself of FMLA rights by requesting leave under the Act

despite ineligibility. *Gomes v. House*, 504 F. Supp. 3d 15, 19 (D.R.I. 2020).

Here we can establish that Host management and human resources

understood that an employee needing leave to care for a family member because of

their serious medical condition may qualify for FMLA leave. The expectation is that

upon learning of such a situation the manager would inform human resources and direct the employee to human resources. (PASMF 2-13, 62, 69). In addition, Host management admitted that he understood that when Ms. Joy was not available it was because she was caring for her mother. (PASMF 35). Record evidence shows that Joy explicitly told management she needed time off because she was caring for her mother with a serious medical condition. (PASMF 36, 40, 44, 52, 63, 65). The record also supports that Joy lost shifts, was disciplined, and was removed from the schedule immediately following notice to her employer of her need for covered leave (PASMF 43, 47-49, 51, 52-71, 73-79, 82-84, 86, 87, 89, 91, 92, 94-97, 103, 109, 113, 114). We also have admission from Host management that he stopped scheduling Joy because of her request for time off. (PASMF 92).

To make out an FMLA retaliation claim, a plaintiff must show that "(1) he availed himself of a protected right under the FMLA; (2) he was adversely affected by an employment decision; [and] (3) there is a causal connection between the employee's protected activity and the employer's adverse employment action." *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 161 (1st Cir. 1998). We have established that Ms. Joy availed herself of a protected right under the FMLA; we have established that she was adversely affected by an employment decision by way of discipline, reduced shifts, shifts taken away, removed from the schedule all together, and denied opportunities to work at other venues. The final element is causation.

The First Circuit has stated that, in reviewing the pleadings of a retaliation claim, temporal proximity can prove causation when supported by more context in the complaint:

There are circumstances in which a "'[v]ery close' temporal proximity between protected activity and an adverse employment action can satisfy a plaintiff's burden of showing causal connection." *Sánchez-Rodríguez v. AT & T Mobility P.R., Inc.*, 673 F.3d 1, 15 (1st Cir. 2012) (quoting *Calero-Cerezo v. United States DOJ*, 355 F.3d 6, 25 (1st Cir. 2004)). Imagine an employee with an unblemished record and steady performance who, shortly after requesting FMLA leave, is terminated by her employer without explanation. In such circumstances, temporal proximity would most likely suffice to allege a plausible claim. *Germanowski v. Harris,* 854 F.3d 68, 74 (1st Cir. 2017). Here we have established causation by both temporal proximity as well as admission that the request for time off was the reason she was removed from the schedule. The last communication between Joy and Rappazzo relating to her need for time off because of her need to care for her mother's serious health condition was on December 27, 2019. She worked her last shift on December 28, 2019 and was never scheduled again. (PASMF 63-70, 94). Further, Rappazzo admits that aside from her occasional limitations on availability Joy was good at her job and good with the customers. (PASMF 19-20). The only disciplinary action Joy received was related to an ongoing scheduling issue where one schedule indicated she was not working and unbeknownst to her another schedule indicated she was working so she did not

show up for the shift. (PASMF 73-39). Host even admits and has a policy that provides:

> Associates who have restrictions on the days of work or the shifts she/he works must understand that this limits the number of hours a manager may schedule you to work. As management must have proper staffing levels at all times in the unit, those associates who are available to work with no restrictions will generally receive more hours. (DSMF 33).

This policy itself is a violation of both FMLA and the ADA as it discourages employees from requesting time off due to a qualifying condition of the FMLA or ADA. Further it is an admission as to causation in that because of Joy's intermittent limitation on her availability she will suffer adverse action and lose shifts.


Viewing the facts in the light most favorable to Joy, as the Court must at this stage, she encountered an ongoing pattern of continuous retaliation immediately following communication that put her employer on notice of her intent to take FMLA covered time off by way of her scheduled shifts consistently being taken away and reduced immediately following such notice until she was ultimately removed from the schedule altogether. Accepting Joy's account of the facts as true, the court must find that Joy was retaliated against for availing herself to FMLA rights.

The summary judgment record supports Joy's FMLA claim as to retaliation and interference and also raises sufficient facts for a jury to conclude that Host's violations were willful. Under Maine Law, an employee may also recover $100 per day for the continuing violation.

### III.    HOST'S FAILURE TO PROVIDE A FULL AND COMPLETE COPY OF JOY'S PERSONNEL FILE CONSTITUTES A VIOLATION OF 26 M.R.S. § 631.

Title 26 M.R.S. § 631 provides in relevant part,

> The employer shall, upon written request from an employee or former employee, provide the employee, former employee or duly authorized representative with an opportunity to review and copy the employee's personnel file if the employer has a personnel file for that employee. The reviews and copying must take place at the location where the personnel files are maintained and during normal office hours…For the purpose of this section, a personnel file includes, but is not limited to, any formal or informal employee evaluations and reports relating to the employee's character, credit, work habits, *compensation and benefits* and nonprivileged medical records or nurses' station notes relating to the employee that the employer has in the employer's possession. ... Any employer who, following a request pursuant to this section, without good cause fails to provide an opportunity for review and copying of a personnel file, within 10 days of receipt of that request, is subject to a civil forfeiture of $25 for each day that a failure continues. The total forfeiture may not exceed $500…The employer may also be required to reimburse the employee, former employee or the Department of Labor for costs of suit including a reasonable attorney's fee if the employee or the department receives a judgment in the employee's or department's favor, respectively…

(emphasis added)

On March 11, 2020, while Ms. Joy was still laid off, undersigned counsel for Plaintiff wrote a preservation and representation letter to Host. The letter explained that Ms. Joy was represented by counsel and would be bringing a retaliation claim. The letter also requested Plaintiff's personnel file pursuant to 26 M.R.S. § 631. Defendant failed to produce the file within the 10 days provided in the statute. Undersigned counsel followed up with Host regarding the file, and again received no response. Plaintiff was denied access to her personnel file until

December 2020, after filing suit when local counsel sent Joy's personnel file to undersigned counsel. In evaluating the merits of a case and potential causes of action, the personnel file can provide invaluable information before entering the discovery period allowing counsel to evaluate what claims to allege and more so, whether to file suit at all.

In support of its motion, Host asserts that because Joy "made no request for access to his personnel file at a location where personnel files are maintained, as required by 26 M.R.S.A.," it is entitled to summary judgment on Count III.  Any such claim must fail.  Host is a large multi-national corporation with employees and offices all over the world.  As Host's human resources generalist explained, she herself works separately from any branch and directs others what files to put in employees' personnel file. She could not identify who made decisions about how to respond to requests for personnel files.  Further, upon two inquiries regarding the personnel file. Host did not agree to have Ms. Joy enter PWM, a secure facility, to obtain her personnel file.

Joy requested her personnel file from Tammy Tszeluga, the human resources representative assigned to the Maine region at the time who created and maintained the personnel files. There is no dispute that the original request was received and there is no dispute that undersigned counsel's additional follow up requesting the file was received. Tszeluga sent each correspondence related to the request for personnel file to the legal department. As the Law Court stated in the analogous context of a demand for timely payment of wages under 26 M.R.S. § 626,

service of process on the employer is sufficient in the Court's view to generate a

factual question as to whether complied with the requirement that demand be made

"at the office of the employer where payrolls are kept." *OfficeMax Inc.*, 773 F. Supp.

2d at 232–33.

Host relies on *White v. Hewlett Packard Enter. Co.*, where in dicta Hornby

queries whether "there may be an issue whether White properly requested access."

Hornby further provides:

> "The statute directs that '[t]he reviews and copying must take place at
> the location where the personnel files are maintained and during
> normal office hours unless, at the employer's discretion, a more
> convenient time and location for the employee are arranged." Id. In a
> 1993 Maine Superior Court case, the plaintiff's lawyer had "requested
> that he be sent a copy of plaintiff's personnel file." Richardson v. Town
> of Rangeley, 1993 Me. Super. LEXIS 109, at *8. Justice Alexander
> stated that "[t]he law only requires that a person seeking access to
> their personnel file be given access to that file at the appropriate
> personnel office. There is no evidence that the defendants ever denied
> plaintiff access to his personnel file at defendants' offices as required
> by 26 M.R.S.A. § 631." Id. White seems to argue that because HP is
> large and international, he was not required to seek access at HP's HR
> office location, wherever that might be. Pl.'s Am. Opp'n at 29. This part
> of the statute may indeed need reworking for today's world where
> cloud-based digital records are replacing physical file folders located in
> a physical location, where employees work at home—sometimes
> remotely from any head office or regional office—and where worldwide
> companies like HP assign HR personnel for an entire country or
> region, or even outsource various HR responsibilities.

*White v. Hewlett Packard Enter. Co.*, No. 2:17-CV-491-DBH, 2019 U.S. Dist. LEXIS

97444, at *10-11 (D. Me. June 11, 2019). However, the court did not reach any

decision on the issue in *White* because the Plaintiff received some portion of his

personnel file and the argument was such that the file produced was not complete.

Here, there was no production of the personnel file, nor any communication from

Host offering Joy access to the personnel file until after filing suit. Further, in a separate subsequent matter, using the same language to request an employee's personnel file, Host produced the personnel file as required by statute.

Based on Host's clear failure to provide Joy with the required information under 26 M.R.S. § 631, it is liable for a forfeiture of $500 and Joy's associated attorneys' fees.  Host's motion for summary judgment on Count III should be denied accordingly.

## IV.    CONCLUSION

For all of the foregoing reasons, accepting as true Plaintiffs Statement of Fact, Defendant's Motion for Summary Judgment must be denied.

Respectfully submitted,

Dated:  March 23, 2022                    */s/ Danielle Quinlan*

_____
Danielle Quinlan, Esq., Bar No. 5480
*Attorney for Plaintiff*
WHITE & QUINLAN, LLC
62 Portland Rd., Suite 21
Kennebunk, ME 04043
(207) 502-7484
dquinlan@whiteandquinlan.com

## <u>CERTIFICATE OF SERVICE</u>

I, Danielle Quinlan, hereby certify that on this 23rd day of March, 2022, I filed the foregoing Opposition to Defendant's Motion for Summary Judgment with the Court's CM/ECF system, which automatically sends notification to all counsel of record.

Dated: March 23, 2022

*/s/ Danielle Quinlan*

_____
Danielle Quinlan, Bar No. 5480
*Attorney for Plaintiff*
WHITE & QUINLAN, LLC
62 Portland Road, Suite 21
Kennebunk, ME 04043
Phone: (207) 502-7484
*dquinlan@whiteandquinlan.com*