UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| TONYA M. JOY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. <u>2:20-cv-00407-NT</u> |
| | ) |
| HOST INTERNATIONAL INC., | ) |
| d/b/a LINDA BEAN'S MAINE LOBSTER CAFE | ) |
| | ) |
| Defendant. | ) |

## **<u>DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**

Despite Plaintiff attempts to muddy the record with self-serving affidavits that contradict her own deposition testimony[1] and irrelevant assertions not contained in the record,[2] the undisputed material facts show that Host did not interfere with Plaintiff's rights under the Maine Family Medical Leave Requirements ("MFMLR"), 26 M.R.S. §§ 844 *et seq*[3] and that Host never retaliated against Plaintiff for requesting leave.

Instead, when Plaintiff notified her supervisor, Antonio Rappazzo, that her mother was ill in December 2019, Mr. Rappazzo's immediate response was to ask if Plaintiff needed ***more*** time

---

[1] As stated in Host's Response to Plaintiff's Additional Statement of Facts Nos. 76, 78, 87, and 93, Plaintiff's affidavit (Doc. 76-1) should be stricken from the record. *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st. Cir. 1994) ("When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed."). Similarly, Plaintiff's Response to Defendant's SMF at ¶¶ 5, 9, 12, and 34, contain impermissible references to her self-serving affidavit, which should also be stricken from the record. *Id.* Plaintiff's Response to ¶¶ 5, 9, and 12 attempts to use her affidavit to support a new contention that she was a full-time employee. However, Plaintiff admitted at her deposition that Host hired her to work part-time, 18 hours per week. (Plaintiff's Deposition Transcript, Doc. 64-1, #471 at P. 30, L. 23-25, P. 31, L. 1-5). Also, in her response to Host's SMF ¶ 34, Plaintiff uses her affidavit to claim she started work in January of 2019, not February. However, at Plaintiff's deposition, she confirmed that her February 2019 start date was accurate. (*Id.* at P. 30, L. 12-16).
[2] Plaintiff relies on "facts" that only appear in her response to Host's Statement of Material Facts that are not included in Plaintiff's own Statement of Additional Material Facts. This Court has made clear that such a tactic is not permissible. Only those facts properly raised in Plaintiff's statement of additional facts may be considered. *See EEOC v. Kohl's Department Stores, Inc.*, 2:11-cv-00320-JAW, Doc. 112, #1305-1307 (D. Me. Jan. 8, 2014) ("The EEOC is not entitled to rely on facts raised in its opposition to Kohl's statement of material facts; those assertions only support the EEOC's denial or qualification of Kohl's statements of fact."); L.R. 56(c-d). Alternatively, if the Court does rely on facts only appearing in Plaintiff's response to Host's SMF, Host should have an opportunity to respond.
[3] Plaintiff exclusively refers to the FMLA, but her Complaint (Doc. 16-4) only contains claims under the MFMLR.

off. (SMF ¶ 73)[4] (Plaintiff's Deposition Ex. 18; Doc. 64-19, #835). Plaintiff declined. When Plaintiff contacted HR Generalist, Tammy Szeluga, in February 2020 to request — ***for the first time*** — FMLA paperwork for intermittent leave, Ms. Szeluga promptly sent her the necessary paperwork. (SMF ¶¶ 84-64). Plaintiff refused to complete any of the required forms. (SMF ¶¶ 92, 98). Plaintiff's inability to obtain MFMLR leave is by her own design. It was Plaintiff's decision to reject additional time off and to refuse to complete the standard certification form required to confirm eligibility for leave. At no point did Host ever impede Plaintiff's ability to seek or receive protected leave. Thus, summary judgment is appropriate as to Plaintiff's claims for MFMLR retaliation and interference, Counts I and II of her Complaint.

Similarly, it was Plaintiff's own deficient request for her personnel file that dooms Count III. As this Court has explained, 26 M.R.S.A. § 631 only requires access to review a personnel file. It does not require that an employer send a physical copy of a plaintiff's personnel file. *See White v. Hewlett Packard Enterprise Co.*, 2019 WL 2438780, at *5 (D. Me. June 11, 2019); *Richardson v Town of Rangeley*, 1993 Me. Super. LEXIS 109, at *8. Host, by Plaintiff's own admission, never denied Plaintiff access to her personnel file. (SMF ¶¶ 98-99). This alone is fatal to her claim and the court should grant Defendant summary judgment on Count III of Plaintiff's Complaint.

**I.      Host Did Not Interfere With Plaintiff's Leave Rights**

Plaintiff appears to argue in her Response (Doc. 77) that Host interfered with her MFMLR rights by (1) not predicting that when she requested more advanced scheduling notice that she actually wanted leave; and (2) that Host's leave certification paperwork was too intrusive to complete. Neither route leads Plaintiff past summary judgment. Additionally, prior to February 2020, Plaintiff was not even eligible for either MFMLR or FMLA[5] leave.

---

[4] Host refers to its Local Rule 56(b) Supporting Statement of Material Facts [Doc. 71] as "SMF" throughout its Reply.
[5] Plaintiff's Complaint does not assert any claims under the FMLA. As such, FMLA eligibility is not even at issue.

        A.      <u>Host properly and timely responded to Plaintiff's single notice of her potential need for intermittent leave.</u>

Plaintiff's Response ignores the fact that she had ample notice of how to request leave and that she only did so once. That is far from sufficient to establish an MFMLR interference claim. Plaintiff admits that during orientation on February 6, 2019 she received the Associate Handbook, which included a detailed policy of "FMLA Coverage and Entitlement." (Plaintiff's Response to SMF; Doc. 80 at ¶¶ 25, 31) (Plaintiff's Deposition Ex. 8; Doc. 64-10, #711). This policy states, among other things, FMLA eligibility criteria and that "[s]ome state laws allow for greater or similar family and medical leave benefits. Check with your human resource personnel if you believe that you are entitled to family and medical leave." (Associate Handbook; Doc. 64-11, #764). Not only does Plaintiff admit to being aware of this policy (Doc. 80 at ¶¶ 31-32), but her actions indicate that she fully understood it. For example, in February 2020, almost exactly 12 months after beginning employment at Host, Plaintiff requested leave. (SMF ¶ 84). To do so, Plaintiff contacted Ms. Szeluga on February 25, 2020 as instructed in the Handbook and asked for "any forms or documents I may need for intermittent FMLA." (*Id.*) (Plaintiff's Deposition Ex. 15; Doc. 64-16, #806). Plaintiff has admitted that this was the first time she ever asked for FMLA paperwork. (Plaintiff's Deposition Transcript; Doc. 64-1, #497 at P. 134, L. 16 to P. 135, L. 1).

Once Host received notice of Plaintiff's request for leave, Ms. Szeluga called Plaintiff on February 28, 2020 to determine why Plaintiff needed the leave and promptly overnighted Plaintiff the necessary paperwork on March 2, 2020 to obtain that leave.[6] (SMF ¶¶ 84-87). There is, quite

---

[6] Plaintiff falsely claims in her Response that "Host admits that Joy was eligible for state FMLA leave contingent upon the supplemental documentation it requested." (Doc. 77, #1545). This is false. The leave paperwork Host sent to Plaintiff stated, "You **may** qualify for state leave but you would need to provide the information requested in Part C in order for us to make a determination." (FMLA Forms; Doc. 64-18, #816). Plaintiff had been employed by Host for the requisite 12 months required under the MFMLR, but Host never made a final determination, because Plaintiff never completed the certification forms. (SMF ¶ 91).

literally, nothing else Host could have done to assist Plaintiff in obtaining leave. Host followed all its legal obligations to Plaintiff. It was Plaintiff who elected not to pursue her request further by failing to complete the required paperwork. Host never denied Plaintiff's request nor interfered with her ability to obtain leave. As such, her claim lacks any merit.

Faced with this reality, Plaintiff now argues that her February 2020 intermittent leave request was not her first request — despite her own testimony to the contrary. (Plaintiff's Response to SMF ¶ 83). This position ignores the facts. First, Plaintiff admits that she removed herself from the work schedule to vacation in Jamaica from October 27 to November 9, 2019 during which time she did not need to care for her mother. (SMF ¶ 44). Upon returning from Jamaica, Plaintiff asked to take her off her next scheduled shift (November 16, 2019) to attend a friend's party — not to care for her mother. (SMF ¶ 49). After nearly three weeks away from work by her own choice, Plaintiff contacted Ms. Szeluga on November 20, 2019 to complain **only** that Host was not posting schedules far enough in advance, **not** to request leave. (SMF ¶ 53). Plaintiff has admitted that she did not ask Ms. Szeluga about FMLA leave during that call. (Plaintiff's Deposition Transcript; Doc. 64-1, #479 at P. 63, L. 7-16). She now attempts to "qualify" her admission by stating that she "did not use the 'magic words' FMLA but that Ms. Szeluga should have known that when Plaintiff requested advanced scheduling, she really needed leave to care for her mother." (Doc. 80 ¶ 54). Aside from being clairvoyant, there was no way for Host to have known that following three weeks of vacationing and a birthday party, that a request to receive schedules in advance meant Plaintiff wanted FMLA leave. *See e.g., Brunelle v. Cytec Plastics, Inc.*, 225 F. Supp. 2d 67, 78 (D. Me. 2002) (quoting *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 980 (5th Cir. 1998) ("While an employer's duty to inquire [into whether leave qualifies under the FMLA] may be predicated on statements made by the employee, the employer is not required to be clairvoyant.")).

The following month, Plaintiff did notify Host that she needed to miss a shift due to her mother's health. On December 27, 2019, Plaintiff texted Mr. Rappazzo that she could not work on December 31, 2019, because "I have no one for my mom, I actually am at Maine Medical now with her cause she got a fever of 101." (SMF ¶ 73) (Doc. 64-19, #835). In response, Mr. Rappazzo asked if Plaintiff needed even more time off. He texted, "I understand and hope all goes well with her! Do you [need] tomorrow also?" (*Id.*) Plaintiff responded, "No!! I need my job!" (*Id.*) Plaintiff did not ask for additional shifts off or any type of leave. Rather, she came in to work the very next day. (Plaintiff's Deposition Transcript; Doc. 64-15, #805) (Rappazzo Affidavit at ¶ 16; Doc. 67-1, #1365). Plaintiff's claim that Host interfered with her ability to obtain leave is cut from whole cloth. She has even admitted that whenever she needed time off from work, Host permitted her to take off all the time she requested – no matter the reason. (SMF ¶ 36).

Yet, assuming *arguendo* that Plaintiff's conversations with Mr. Rappazzo and Ms. Szeluga prior to February 2020 were sufficient notice of Plaintiff's need for leave, Plaintiff was **not** eligible for leave under the MFMLR at that time, because she had not worked for Host for 12 consecutive months (nor had she worked the requisite number of hours under the FMLA). (SMF ¶¶ 5; 89); 26 M.R.S. §844(1); 29 U.S.C. §2611(2)(A). Thus, there were no leave rights for Host to interfere with and Plaintiff suffered no prejudice. This court has previously held that without such prejudice, a plaintiff cannot maintain an interference claim due to lack of notice. *See Waterman v. Paul G. White Interior Sols.*, 2019 WL 5764661, at *3 (D. Me. Nov. 5, 2019) ("[F]ailure to follow the notice requirements may give rise to an interference claim. . . However, in order to recover for technical violations of the notice requirements, an employee must show that the lack of notice caused some prejudice."). Prejudice is established where "[a]n employer's failure to explain FMLA procedures properly and accurately . . . causes the employee to forfeit FMLA

protections." *Crevier v. Town of Spencer*, 600 F. Supp. 2d 242, 257 (D. Mass. 2008) (quotation marks and citations omitted). For example, lack of notice is prejudicial if the employee can show that he "would not have structured leave in the same way had notice been provided." *Id.*; *see also Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) (no relief for notice violations or interference under the FMLA "unless the employee has been prejudiced by the violation."). Here, Plaintiff suffered no prejudice because she was not eligible for leave until she had been employed by Host for "12 consecutive months" after her February 6, 2019 start. *See* 26 M.R.S. §844(1). Plaintiff does not address this landmine to her claim, because there is no excusing the fact that she was not eligible for leave under the MFMLR (or FMLA) until February of 2020.[7]

### B. Plaintiff Chose Not to Complete Host's Leave Certification Forms.

Plaintiff also claims that Host interfered with her leave rights by requesting documentation of her need for leave that was "too intrusive." She is wrong, both from a legal standpoint and according to her own mother. Maureen Joy testified that if Plaintiff had asked her or her physician to complete the leave paperwork that she would have done so. (Maureen Joy Deposition Transcript; Doc. 64-47, #1328 at P. 50, L. 13-15). However, Plaintiff made the unilateral decision not to fill out or return the certification form. (SMF ¶¶ 91; 93-96).

Legally, it is well-established that an employer can require medical documentation or a physician's certification to verify an employee's need for leave. *See* Defendant's MSJ Memo at Doc. 70, #1430 (collecting cases); 26 M.R.S. §844(1)(B) ("The employer may require certification from a physician to verify the amount of leave requested by the employee . . ."). The federal regulations specifically state that failure to return certification can result in the denial of FMLA

---

[7] In support of her interference claim, Plaintiff also alleges that Mr. Rappazzo prevented her from working the requisite number of hours to become eligible for FMLA leave. (Plaintiff's Response; Doc. 77, #1545). This, however, is false. Moreover, Plaintiff only brings claims under the MFLMR, not the FMLA. The MFMLR only requires 12 months of consecutive employment to be eligible for leave. 26 M.R.S. §844(1). Unlike the FMLA, there is no hours requirement.

leave, which also apply to MFMLR requests. 29 C.F.R. § 825.305(d); *see also Bailey v. Dal Glob. Servs. LLC*, 2019 WL 3414386, at *8 (D. Me. July 29, 2019) (granting defendant summary judgment on MFMLR interference claim and holding, "responsibility was upon [plaintiff] to provide notice and, if requested, certification to verify the amount of leave requested.").

Plaintiff admits that she received the standard FMLA paperwork Host provides to all employees via FedEx on March 3, 2020. (SMF ¶ 91). Plaintiff also admitted that she elected not to complete or return any of the forms. (SMF ¶¶ 92; 97). To excuse her failure, Plaintiff now argues that the general release[8] seeking Plaintiff's mother's medical records was "invasive and unnecessary" and, thus, she did not need to complete any of the FMLA forms. (Plaintiff's Response; Doc. 77, #1545). This is pure sophistry. Plaintiff provides no legal support whatsoever for this proposition of a right to privacy under the FMLA — because there is none. In fact, there is an abundance of case law to the contrary. This court examined the issue in *Whitney v. Wal-Mart Stores, Inc.*, 2003 WL 22961210 (D. Me. Dec. 16, 2003). In *Whitney*, this court held, "Protection of medical privacy is not mentioned in the statement of purposes of the FMLA. 29 U.S.C. § 2601(b). In the absence of any citation to a provision of the FMLA giving an employee a right to 'medical privacy,' the plaintiff has not established a right provided under the FMLA . . ." *Id.* at *11. Magistrate Cohen also noted in *Whitney* that "[m]y own research has located no reported case in which an employee asserted that a right to medical privacy is provided by the FMLA and therefore may serve as the basis for a [FMLA interference] claim." *Id.* at n.6; *see also Kitts v. Gen. Tel. N., Inc.*, 2005 WL 2277438, at *13 (S.D. Ohio Sept. 19, 2005) (finding no support for FMLA interference claim, even where defendant allegedly compelled plaintiff to disclose medical information to unauthorized personnel, because FMLA does not provide employees with a general

---

[8] Plaintiff attempts to portray Host as hiding this release. However, the release, Certification of Healthcare Provider, and Notice of Eligibility, were all freely exchanged in discovery. (Plaintiff's Affidavit Exhibit 8; Doc. 76-9).

right to privacy); *O'Reilly v. Rutgers*, 2006 WL 141895, at *6 (D.N.J. Jan. 19, 2006), *aff'd*, 223 F. App'x 131 (3d Cir. 2007) (holding that "[plaintiff] has set forth no legal basis that [defendant] interfered with any FMLA rights" for requiring medical records to certify leave request).

Here, Plaintiff did not complete any of the FMLA certification forms. (SMF ¶¶ 91, 96). Plaintiff did not contact anyone at Host to express her concerns about the information sought. (*Id.*)[9] Plaintiff did not ask her mother or her mother's physician to complete the certification form. (SMF ¶¶ 93-95). Plaintiff simply did nothing after Host timely sent the requisite paperwork to her. The only one who interfered with Plaintiff's ability to obtain leave was herself.

## II. Host Did Not Retaliate Against Plaintiff For Requesting Leave

Plaintiff's failure to return the leave certification paperwork, and her ineligibility for leave prior to February 2020, both eviscerate her retaliation claim. As Plaintiff has admitted, she did not complete any the FMLA paperwork or provide a physician's certification to support her request for intermittent leave. This alone should end her retaliation (and interference) claims. *See e.g. Cash v. Smith*, 231 F.3d 1301, 1307 (11th Cir. 2000) (holding that a plaintiff cannot establish a prima facie case of FMLA retaliation where she fails to submit a requested FMLA certification demonstrating entitlement to FMLA leave); *Crowell v. Denver Health and Hosp. Authority*, 572 Fed App'x 650, 654 (10th Cir. 2014) ("The failure to provide the employer with complete and sufficient certification may result in the denial of FMLA leave."); *Clum v. Jackson Nat. Life Ins. Co.*, 2013 WL 655146, at *9 (E.D. Mich. Feb. 22, 2013) ("the Court finds that [plaintiff's] failure to submit a sufficient FMLA certification when requested demonstrates that she was not entitled to FMLA leave and her FMLA interference claim fails as a matter of law."). There is no legitimate

---

[9] The FMLA paperwork Host sent to Plaintiff states in bold font, "[i]f sufficient information is not provided in a timely manner and you do not contact HR in a timely manner to provide a permissible reason why you are unable to provide the requested information your leave may be denied." (FMLA Forms; Doc. 64-18, #810).

dispute that Plaintiff's failure to return the certification form precludes her from establishing a retaliation claim. As such, this court should grant summary judgment in Host's favor.

Additionally, as detailed *supra*, I.A, Plaintiff's first day of employment at Host — her orientation day — was February 6, 2019. Thus, per the plain terms of the MFMLR, she was not eligible for leave until she had "been employed by the same employer for 12 consecutive months." 26 M.R.S. §844(1). Here, Plaintiff was not eligible for leave until February 6, 2020. Soon thereafter, on February 25, 2020, Plaintiff requested leave and Host sent her the necessary paperwork, which Plaintiff refused to complete and return. That is certainly not retaliation.

Plaintiff's primary support for her opposition to Host's summary judgment motion grossly misleads the court that eligibility plays no role in assessing an interference claim. Plaintiff states that "when the First Circuit examined this very issue in *Reid v. Centric Consulting, LLC*, it agreed with Tenth Circuit reasoning that an employee who was ineligible for FMLA leave could maintain a cause of action alleging FMLA retaliation . . . ." (Plaintiff's Response; Doc. 77, #1547). The First Circuit held no such thing in *Reid*, because *Reid* is not a First Circuit case. *Reid* is an unpublished decision from the District of Massachusetts that the First Circuit never considered. 2018 WL 1542355 (D. Mass Mar. 29, 2018). What *Reid* did examine is whether the plaintiff, who took 14 weeks of leave, part of which was designated as FMLA leave by his employer, could establish a *prima facie* case of FMLA retaliation. In its motion, the defendant argued that the plaintiff could not establish retaliation since in hindsight he was not eligible for FMLA leave. The *Reid* court found that even though the plaintiff was later determined to be ineligible for the leave he *had already* taken, that the doctrine of equitable estoppel could potentially apply to *Reid's* retaliation claim. As a result, the court scheduled a status conference to determine whether further briefing was warranted before reopening discovery.

9

Ms. Joy's claim is distinguishable. Here, Host never designated any of Plaintiff's leave as FMLA leave (since she was not eligible or qualified for such leave). Once Plaintiff was eligible for MFMLR leave, she made a single request for intermittent leave, Host sent her the necessary forms, and Plaintiff refused to complete them. As far as Host knew, Plaintiff no longer wanted to pursue leave. Several weeks after Plaintiff's request for leave, a global pandemic halted nearly all air travel and indoor dining. As a result, Host furloughed almost all its employees at the Jetport. (SMF ¶ 100-101). Plaintiff was in no way singled out or retaliated against during that furlough for requesting intermittent leave. The pandemic-related furloughs affected almost every Host employee regardless of position. As such, Plaintiff cannot rely on the timing of a company-wide shut down as evidence of retaliation based on the proximity of the furlough to her request for leave. *See Carrero-Ojeda v. Autoridad de Energía Eléctrica*, 755 F.3d 711, 720 (1st Cir. 2014) ("[W]hile temporal proximity is one factor from which an employer's bad motive can be inferred, by itself, it is not enough--especially if the surrounding circumstances undermine any claim of causation."). Even prior to Plaintiff's request for leave, Host never took any retaliatory action against her. Rather, Plaintiff was the one who took three weeks of vacation in three months (SMF ¶ 44, 73); called out of 9 of 12 scheduled shifts in November and December 2019 (SMF ¶¶ 58-63); and reduced her availability to two days per week (SMF ¶ 66).

Plaintiff also relies on *McArdle v. Town of Dracut/Dracut Public Schools*, which *is* a First Circuit case. 732 F.3d 29 (1st Cir. 2013). In *McArdle*, the First Circuit affirmed summary judgment in favor of the defendant, "ruling that [plaintiff] had not worked enough to be eligible for FMLA leave, and otherwise finding his claims meritless." *Id.* at 30. Like Ms. Joy, the plaintiff in *McArdle* was an employee who, after repeatedly missing work for various reasons, asked for FMLA leave and refused to complete the medical certification. After McArdle did not return the certification

forms nor show up to work, the defendant fired him. McArdle sued and alleged FMLA interference, which the Court found meritless. Addressing similar notice arguments that Ms. Joy asserts here, the Court determined that "[i]t is not clear on the face of the [FMLA] notice regulations whether they require notice of ineligibility to a person who is ineligible." 732 F.3d at 34. Even assuming the defendant had violated the notice requirements, the Court reasoned that plaintiff was not entitled to any relief because he did not suffer any harm. The Court explained, "[i]n short, nothing was lost, nor was any harm suffered, by reason of the alleged violations. Therefore, even assuming that Dracut should have sent McArdle a notice that he was ineligible for FMLA leave, no remedy could or need be tailored for such a harmless error." *Id.* at 35. The Court also detailed that "it is not clear that one not entitled to take FMLA leave 'avails himself of a protected right' when requesting to take such leave. The case law is both split and not fully developed regarding such an argument." *Id.* at 35-36.

Similarly, Plaintiff's reliance on *Gomes v. House*, 504 F. Supp. 3d 15, 19 (D.R.I. 2020) is also misplaced. In *Gomes*, the plaintiff contracted COVID-19 and requested paid leave. Based on only the allegations in Plaintiff's Complaint (since *Gomes* involved a Motion to Dismiss, not a Motion for Summary Judgment), the Court accepted Plaintiff's allegations that she had specifically requested leave from her employer after becoming ill with COVID-19 in April and May of 2020 and was fired in May 2020 almost immediately after asking for leave. *Id.* at 20. In examining *McArdle*, the *Gomes* court explained, "[t]his Court understands the complaint as stating that Ms. Gomes was terminated as a result of her request for FMLA leave. Thus, Ms. Gomes has done enough at this stage of the litigation to show that she 'availed' herself of FMLA rights by requesting paid leave under the Act." *Id.* at 19.

Here, this Court can look at the full summary judgment record, not just the pleadings on a

11

Motion to Dismiss. The record here shows that by Plaintiff's own admission she **never** "availed herself of [MFMLR] rights" (and was not eligible for MFMLR) until she made her first request to Ms. Szeluga on February 25, 2020. (SMF ¶ 83). After making this request, Host sent Plaintiff the necessary certification forms, which Plaintiff refused to complete. (SMF ¶ 91). Host certainly did not interfere with Plaintiff's attempt to obtain leave, nor did it retaliate against her once she made this request. Plaintiff suffered the same fate as 94% of all of Host's employees at the Jetport who were furloughed due to the COVID-19 pandemic. (SMF ¶ 100). The mass furlough had nothing to do with her request for intermittent leave. Moreover, in December of 2019 – before Plaintiff ever requested leave – the record shows that Plaintiff was the one who removed herself from the schedule through multiple vacations (SMF ¶¶ 44, 73), numerous call outs (SMF ¶¶ 58-63), and a voluntary reduction in availability (SMF ¶ 66). In fact, when informed about Plaintiff's mother's illness, Host's manager asked Plaintiff if she wanted **more** time off. (Plaintiff's Deposition Ex. 18; Doc. 64-19, #835). That is certainly not retaliation, nor interference.

In this matter, Plaintiff only made one single request for intermittent leave. In response, Host sent her the certification forms, which Plaintiff refused to complete. Host did not take any adverse action against her because she had inquired about leave.[10] Plaintiff argues that Host retaliated against her in November and December of 2019 – prior to becoming eligible for MFMLR leave. She alleges that Host reduced her hours in retaliation for notifying Mr. Rappazzo and Ms. Szeluga that she cared for her mother, despite never actually requesting any leave. This is not true.

---

[10] Host gave Plaintiff a written warning for not calling out of work in accordance with Host's attendance policy. (PSAMF ¶ 73) (Doc. 76-5, #1506). Plaintiff does not claim that she needed the day off to care for her mother. (Plaintiff's Deposition Transcript; Doc. 64-1, #480-482 at P. 69, L. 9 to P. 71, L. 7 and P. 72, L. 20 to P. 76, L. 17; #492 at P. 114, L. 3-9). Moreover, as a matter of law, counseling does not constitute an adverse employment action. *Bhatti v. Trustess of Boston University*, 659 F.3d 64, 73 (1st Cir. 2011) (holding that reprimands without tangible consequences do not constitute materially adverse employment actions).

To the contrary, when Plaintiff told her supervisor that she needed the day off to care for her ill mother on December 27, 2020,[11] Mr. Rappazzo asked if she needed **more** time off from work. (*Id.*; Doc. 64-19, #835). Plaintiff declined. (*Id.*) After working one of her next two scheduled shifts to close out 2019, Plaintiff took a week-long vacation to Florida. (SMF ¶ 73). In fact, the undisputed record shows that Plaintiff was vacationing in Jamaica and Florida for 22 of the 84 days (26%) between October 27, 2019 and January 18, 2020. (SMF ¶¶ 44, 73). During that same time, Plaintiff called out 9 of 12 scheduled shifts. (SMF ¶¶ 58-63). Also, in December 2019, Plaintiff notified Host that she was only available to work daytime shifts two days per week. (SMF ¶ 66). Host did **not** remove Plaintiff from the schedule, she removed herself.

Following Plaintiff's return from her Florida vacation on January 19, 2020, Plaintiff immediately applied for unemployment benefits. (SMF ¶ 78). By this time, late January 2020, the typical winter slowdown in business worsened due to growing awareness of COVID-19, which turned into a global pandemic and shuttered the hospitality, retail, and travel industries by March 2020. Host did not reduce Plaintiff's work hours for any retaliatory motives. It did not have a need for a part-time server with limited availability and her two requested shifts were never guaranteed. (Rappazzo July 19, 2021 Deposition Transcript; Doc. 64-34, #1169 at P. 64, L. 24 to P. 65, L. 3) (SMF ¶ 68). Host also had no intention of ending Plaintiff's employment. She remained on the active employee roster and even attended Host's holiday party at the Jetport on February 8, 2020. (SMF ¶ 80) (Plaintiff's Deposition Ex. 18; Doc. 64-19, #854). Additionally, until February 25, 2020, Host did not know Plaintiff was asking for leave. She never previously made such a request. (SMF ¶ 83). Plaintiff may disagree with Mr. Rappazzo's staffing decisions, but her limited

---

[11] This was the first time the Plaintiff asked to take time off to care for her mother. Otherwise, Plaintiff only asked for advance notice of her schedule. (Plaintiff's Deposition Transcript; Doc. 64-1, #473 at P. 40, L. 20-25; P. 41, L. 1-16; and #503-504 at P. 161, L. 19 to P. 162, L. 13) (Tammy Szeluga Deposition Transcript; Doc. 64-32, #1113 at P. 14, L. 10-14; and #1120 at P. 41, L. 21 to P. 42, L. 21).

availability,[12] frequent vacations, and repeated callouts combined with a seasonal drop in business and an impending pandemic resulted in the reduction of Plaintiff's hours — not her request for leave. There was no retaliation and Plaintiff has not and cannot demonstrate that Host's legitimate non-discriminatory reasons for its business decisions were a pretext for unlawful discrimination.

### III.  Plaintiff Personnel File Request Was Deficient

Plaintiff's Response on Count III highlights that Plaintiff and her counsel knew that the March 11, 2020 personnel file request was deficient. Plaintiff erroneously states, "Host asserts that because Joy 'made no request for access to his personnel file at a location where personnel files are maintained, as required by 26 M.R.S.A.,' it is entitled to summary judgment on Count III." (Plaintiff's Opposition; Doc. 77, #1552). Although Host agrees with this argument, nowhere in Host's Motion nor in its SMF does Host use the quoted language that Plaintiff attributes to Host. The language that Plaintiff attributes to Host is a direct quote from the defendant's summary judgment memorandum in *White v. Hewlett Packard Enterprise Company*, 2019 WL 2438780 (D. Me. June 11, 2019) *aff'd* 985 F.3d 61 (1st Cir. 2021) where Plaintiff's current counsel represented the plaintiff/appellant whose claims Judge Hornby and the First Circuit found warranted summary judgment. In *White*, this Court explained that 26 M.R.S.A. § 631 only requires *access* to review a personnel file. 2019 WL 2438780, at *5. The statute does not mandate that an employer directly deliver a copy. *Id.* ("[t]he law only requires that a person seeking access to their personnel file be given access to that file at the appropriate personnel office. There is no evidence that the defendants

---

[12] Plaintiff argues that Host's policy regarding work schedules is discriminatory on its face, that it violates the FMLA and the ADA, and that it is an admission of causation. (Plaintiff's Response; Doc. 77, #1550). This is simply untrue. Host's policy regarding work schedules discusses an employee's availability to be scheduled certain days of the week or hours of the day. (SMF ¶ 33). It does not discuss an employee's request for time off from work for a medical reason. That is addressed by Host's FMLA Coverage and Entitlement Policy. (SMF ¶ 31). Furthermore, Plaintiff's Complaint does not allege that Host's policy is discriminatory and it does not allege any violations of the FMLA or the ADA. Finally, in Plaintiff's Answers to Interrogatories, she fails to identify Host's policy regarding work schedules when directly asked about admissions of liability or against interest. (Plaintiff's Interrogatory Answers; Doc. 64-5, #572 at #12). Accordingly, the Court should disregard all of Plaintiff's arguments regarding Host's policy in their entirety.

14

ever denied plaintiff access to his personnel file at defendants' offices as required by 26 M.R.S.A. § 631.") (*quoting Richardson v. Town of Rangeley*, 1993 Me. Super. LEXIS 109, *8). Exactly as in *Richardson*, "Plaintiff's attorney requested that [plaintiff] be sent a copy of plaintiff's personnel file" which the court found was deficient. *Id.*[13]

Despite this Court's warning in *White*, which was not dicta, Plaintiff here used the same, ineffective request to obtain a copy of, not access to, her personnel file that the Court rejected in *White*. Here, Plaintiff offers no evidence that she was ever denied access to her personnel file at any office location (SMF ¶¶ 98-99); thus, "Plaintiff has failed to prove that he has not been given appropriate access to his personnel file as required by 26 M.R.S.A. § 631." *Richardson*, 1993 Me. Super. LEXIS 109, *8. Plaintiff also does not dispute eventually receiving her complete personnel file. As such, Plaintiff's claim fails as a matter of law.[14]

## IV. Plaintiff Concedes That She Is Not Entitled To Compensatory and Punitive Damages Under the MFMLR

In its Motion for Summary Judgment, Defendant explained how Plaintiff's request for compensatory and punitive damages in Counts I and II of her Complaint were misplaced. (Doc. 70, #1439). Plaintiff appears to have conceded as much, because her Opposition does not respond to nor address this issue at all. As a result, Host prevails on this argument. *See, e.g., Thayer Corp. v. Reed*, 2011 WL 2682723, at *11 (D. Me. July 11, 2011) (holding party failing to respond in opposition to motion to dismiss "therefore waived any challenge to the dismissal"); *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 19 (1st Cir. 2009) (same).

---

[13] Additionally, Plaintiff never distinguishes *Richardson* or *White*, which by their plain language forecloses Plaintiff's claim. Instead, Plaintiff simply proposes that an unstated exception should be read into Maine's Personnel File Law because Host "is a large multi-national corporation with employees and offices all over the world." (Plaintiff's Opposition; Doc. 77, #1552). Plaintiff offers no support or authority for the proposition because there is none.

[14] This court should strike and disregard Plaintiff's reference to a separate subsequent matter involving Host that is not in litigation, nor relevant to Plaintiff's claims. (Plaintiff's Opposition; Doc. 77, #1554). The document(s) Plaintiff references are not in the summary judgment record nor were they ever a part of discovery.

Case 2:20-cv-00407-NT   Document 94   Filed 05/03/22   Page 16 of 17   PageID #: 1835

Dated: May 3, 2022                               Respectfully submitted,

                                                 */s/ Melinda J. Caterine*
                                                 Melinda J. Caterine (Bar No. 007129)
                                                 LITTLER MENDELSON, P.C.
                                                 One Monument Square, Suite 600
                                                 Portland, ME 04101
                                                 Phone: 207.774.6001
                                                 mcaterine@littler.com

                                                 *Attorney for Defendant*
                                                 Host International, Inc.

## CERTIFICATE OF SERVICE

I, Melinda J. Caterine, hereby certify that I electronically filed the foregoing document using the CM/ECF system on the date noted below, which will send notification of such filing to the following:

Laura H. White, Esq.
Danielle M. Quinlan, Esq.
White & Quinlan, LLC
62 Portland Road, Suite 21
Kennebunk, ME 04043
lwhite@whiteandquinlan.com
dquinlan@whiteandquinlan.com


Dated:  May 3, 2022

*/s/ Melinda J. Caterine*
Melinda J. Caterine (Bar No. 007129)
LITTLER MENDELSON, P.C.
One Monument Square, Suite 600
Portland, ME 04101
Phone:  207.774.6001
mcaterine@littler.com

*Attorney for Defendant*
Host International, Inc.