## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

TONYA M. JOY,                          )
                                       )
            Plaintiff,                 )
                                       )
v.                                     )   Docket No. 2:20-cv-00407-NT
                                       )
HOST INTERNATIONAL INC.,               )
d/b/a LINDA BEAN'S MAINE               )
LOBSTER CAFE,                          )
                                       )
            Defendant.                 )

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT[*]

Before me is the Defendant's motion for summary judgment ("**Def.'s Motion**")

(ECF No. 70). For the reasons stated below, the motion is **DENIED**.

## FACTUAL BACKGROUND[1]

Plaintiff Tonya M. Joy is a former employee of the Defendant, Host

International Inc., d/b/a Linda Bean's Maine Lobster Café ("**Host**"). Def.'s SMF ¶ 5.

---

[*]     This opinion is **SEALED** until 12:00 p.m. on September 30, 2022, to give the parties an opportunity to notify the Court, by sealed filings, whether any portion(s) need to be redacted because of confidentiality restrictions.

[1]     The facts are drawn from: (1) documents in the summary judgment record (ECF Nos. 64, 67–69, & 76); and (2) the Defendant's consolidated Reply Statement of Material Facts ("**Def.'s SMF**") (ECF Nos. 95–96), which is a compilation of the Defendant's statement of material facts (ECF Nos. 71–72), the Plaintiff's amended response to the Defendant's statement of material facts and the Plaintiff's statement of additional material facts (ECF Nos. 88–89), and the Defendant's reply statement of material facts (ECF Nos. 95–96). I construe the record evidence in the light most favorable to the Plaintiff as the nonmoving party and draw all reasonable inferences in her favor. *EdgePoint Cap. Holdings, LLC v. Apothecare Pharmacy, LLC*, 6 F.4th 50, 57 (1st Cir. 2021).

Compiling this factual background was made more difficult by the fact that neither party fully complied with my Local Rule 56(h) Pre-Filing Conference Report and Order (ECF No. 56). The Plaintiff failed to continue the paragraph numbering when she filed her statement of additional material facts. Rather than trying to "work collaboratively" with counsel for the Plaintiff—as my Order directs—to correct this mistake, counsel for the Defendant instead chose to merely point out the failure in a footnote and then perpetuate the misnumbering in its own reply filing. In the future, counsel are

Host operates several food and beverage service establishments at the Portland International Jetport (the "**Portland Jetport**"), including Linda Bean's Lobster Café ("**Linda Bean's**"), Shipyard Brew Pub, Starbucks, and Burger King. Def.'s SMF ¶ 7. Ms. Joy worked as a server and bartender at Linda Bean's. Def.'s SMF ¶ 5.

Ms. Joy applied to Host in January of 2019, and stated on her application that she would be available to work "30 hours per week" and, with respect to available times, would be "available all week for all shifts." Def.'s SMF ¶¶ 9–11; Joy Ex. 6 – Application & Resume (ECF No. 64-8). Host offered Ms. Joy a position as a server and bartender in the last week of January of 2019, and she attended Host's new hire orientation and training on February 6, 2019. Def.'s SMF ¶¶ 12–13.

At Ms. Joy's orientation on February 6, 2019, she also completed an Employee Availability Request Form in which she changed her shift availability to Monday through Saturday. Def.'s SMF ¶ 19. On the form, she stated that she "would like 30 hours & only Sundays off." Def.'s SMF ¶ 21. Although the request form states that there is no guarantee that an employee's requested availability would be accommodated, Host did accommodate Ms. Joy's request to not work Sundays. Def.'s SMF ¶¶ 20, 23.

---

advised to follow all of the directives in my Local Rule 56(h) orders, including my request for sequential numbering and for cooperation of the parties in putting together a single coherent document that the Court can easily use. Because of the duplicative numbered paragraphs before me, I refer to Plaintiff's Additional Statement of Material Facts ("**Pl.'s ASMF**") when I need to cite one of the Plaintiff's additional facts. Citations to paragraphs in the Defendant's SMF and the Plaintiff's ASMF incorporate the response from the opposing party.

Ms. Joy began working shifts at Linda Bean's in late January or early February of 2019.[2] For the first few months of her employment, she generally worked three or four days a week, usually on Saturday and a couple of weekdays. Def.'s SMF ¶ 34; Dep. of Tonya Joy Part 1 ("**Joy Dep.**") (ECF No. 64-1); Joy Ex. 14 – Timecard & Schedules ("**Timecards**") (ECF No. 64-15). She worked fewer days in late June, July, and early August due to medical issues. Def.'s SMF ¶ 35.[3]

The parties dispute Ms. Joy's schedule for the remainder of 2019. Ms. Joy claims, with some support, that the computer-generated schedules differed from the handwritten schedules actually posted at Linda Bean's. Def.'s SMF ¶¶ 55, 60–62. Suffice it to say that Ms. Joy was scheduled for fewer days during the fall months, but she was also unavailable to work two weeks in October because she was on vacation, and she had additional conflicts because she needed to care for her mother who is diagnosed with multiple sclerosis and confined to a wheelchair. Pl.'s ASMF ¶ 36. By late November, Ms. Joy was being scheduled for only one day a week. Dep.

---

[2]     The parties dispute exactly when Ms. Joy's employment with Host began. Host maintains (and its records indicate) that her first day of work was February 6, 2019, when she began training. Def.'s SMF ¶¶ 5, 34; Dep. of Tonya Joy Part 1 ("Joy Dep.") 66:18–67:8 (ECF No. 64-1), Joy Ex. 14 (ECF No. 64-15). Ms. Joy disputes that her start date was February 6, 2019 and instead recalls that she began working for Host the last week in January and was employed by Linda Bean's beginning January 29, 2019. Def.'s SMF ¶¶ 5, 34. In her deposition, she provided sworn testimony that she started working "either the 25th or 31st" of January, but then later agreed that she attended orientation on February 6th and started working after that. Joy Dep. 28:18–29:3, 29:19–30:16. In her sworn affidavit, she states that she worked for Host beginning January 29, 2019. Aff. of Tonya Joy ¶ 1 (ECF No. 76-1). I don't consider these discrepancies material to Host's motion for summary judgment.

[3]     The parties dispute whether Host accommodated Ms. Joy's doctor-supported request not to work consecutive days because of swelling in her legs, but this case is about family medical leave, not disability discrimination. Def.'s SMF ¶¶ 37–38; Joy Dep. 79:5–16; Joy Ex. Doctor Note (ECF 64-13); Dep. of Antonio Rappazzo ("**Rappazzo Dep.**") Ex. 6 ("**Sched.**") (ECF Nos. 64-42, 63-1, & 66-1).

of Antonio Rappazzo ("**Rappazzo Dep.**") Ex. 6 ("**Sched.**") (ECF Nos. 64-42, 63-1, & 66-1); Timecards.

Ms. Joy texted her supervisor, Antonio Rappazzo, in late November and asked to speak with him about her schedule, writing: "[I]t's my understanding that I'm only scheduled Friday and Saturdays, I apparently lost my Thursdays . . . ." Pl.'s ASMF ¶ 52. She further texted:

> As you know I am a care taker for my mother beyond my control and pay for outside assistance, right before Christmas, I'm finding out my shifts have been cut so I'll need to find something else to coincide with my employment at HMSHOST so please don't schedule me Saturdays as I need to offer my services that day for my 2nd job. I'm sad that my hours are cut but I guess you gotta do what the company wants.

Pl.'s ASMF ¶ 52; Joy Ex. 18 – Texts with Antonio Rappazzo (ECF No. 64-19). Ms. Joy also contacted Host's human resources specialist, Tammy Szeluga, to complain that Host was not following the company policy of posting schedules a week in advance, and she told Ms. Szeluga that she needed the schedule in advance because of her mother who had "so many doctors' appointments." Def.'s SMF ¶¶ 53–54; Joy Dep. 42:6–14.

In December, Ms. Joy worked only three days at Linda Bean's—Thursday one week, Friday the next week, and Saturday the week after that. Timecards. Ms. Joy was not scheduled for any shifts after that. Sched. In late December, Ms. Joy informed Mr. Rappazzo that she was going to Florida for a weeklong vacation starting January 11, 2020, but she asked to work on Friday, January 3, 2020, and Saturday, January 4, 2020. Def.'s SMF ¶ 77. Mr. Rappazzo told her no, and that he had already posted the schedule and she was not on it. Def.'s SMF ¶ 77. Ms. Joy also asked Mr. Rappazzo

if she could get some hours when she returned from Florida or if she could call in every day for a call-out position. Joy Ex. 18. She also asked on multiple occasions if she could work at other Host-owned venues at the airport, but Mr. Rappazzo apparently told her that the other venues did not need help. Def.'s SMF ¶ 77; Pl.'s ASMF ¶¶ 60, 95.

Mr. Rappazzo has given varying reasons for the reduction in Ms. Joy's schedule, including Host's business needs and Ms. Joy's "multiple callouts," "request for time off," and "lack of availability." Def.'s SMF ¶ 67. For her part, Ms. Joy told both Mr. Rappazzo and Ms. Szeluga that she thought she was not being scheduled to work because she was being "blackballed" for contacting human resources. Def.'s SMF ¶ 74; Pl.'s ASMF ¶ 84.

On January 19, 2020, the day after returning from her Florida vacation, Ms. Joy applied for and was granted unemployment benefits. Def.'s SMF ¶ 77. Even though she did not work at Host after December 28, 2019, and she began receiving unemployment benefits in January of 2020, Ms. Joy remained on Host's active employee roster. Def.'s SMF ¶¶ 77, 80. On January 20, 2020, Ms. Joy emailed Ms. Szeluga, reporting that it was her "3rd week with no hours" and asking Ms. Szeluga to contact her. Pl.'s ASMF ¶ 103. On February 25, 2020, she again emailed Ms. Szeluga and stated that her availability is "Monday–Saturday should [Ms. Szeluga] need to update that information." Def.'s SMF ¶ 81; Joy Ex. 15 – FMLA Request Correspondence (ECF No. 64-16).

In the same February 25th email, Ms. Joy requested "any forms or documents [she] may need for intermittent FMLA." Def.'s SMF ¶ 83; Joy Ex. 15. During a follow-up phone call, Ms. Joy explained to Ms. Szeluga that she needed intermittent leave to care for her mother, and Ms. Szeluga overnighted the requested paperwork to Ms. Joy on March 2, 2020. Def.'s SMF ¶¶ 84, 87. Ms. Szeluga had checked two boxes on the form stating: "You have not met the FMLA's 1,250-hours-worked in the last 12 months requirement" and "You may qualify for state leave but you would need to provide the information requested in Part C in order for us to make a determination." Def.'s SMF ¶¶ 88–89. Part C then provides that a "Certification of Health Care Provider for Family Member's Serious Health Condition" is required "to support your request for leave under the FMLA." Joy Ex. 17 – FMLA Forms (ECF No. 64-18).

Ms. Joy states that she did not complete and return the paperwork because of Host's requirement that Ms. Joy's mother release her medical records, which Ms. Joy felt was too invasive and she didn't want her mother's medical records going to people that didn't need to know them. Def.'s SMF ¶¶ 91–92. According to Host, the leave paperwork did not ask for Ms. Joy's mother's medical records, only a certification by her medical provider. Def.'s SMF ¶ 92. But the Plaintiff denies this and points to an "Authorization for Release of Medical Information" that she says was included in the paperwork package that was sent to her. Pl.'s ASMF ¶¶ 105–08. That authorization form does require a release for "[a]ny and all medical information regarding [Ms.

Joy's] pending request for leave." Pl.'s ASMF ¶ 106; Aff. of Tonya Joy Ex. 8 (ECF No. 76-9).[4]

On March 11, 2020, Plaintiff's counsel emailed Ms. Szeluga and, on behalf of Ms. Joy, "request[ed] a complete copy of all documents that are considered part of her personnel file pursuant to Maine law (26 M.R.S. § 631)" within ten days. Def.'s SMF ¶ 98; Pl.'s ASMF ¶ 115; Aff. of Danielle Quinlan Ex. 1 (ECF No. 76-16). In that same correspondence, counsel for the Plaintiff also demanded that Host maintain all documentation and electronic evidence related to Ms. Joy's employment and any documents that may be considered discoverable in future litigation. Aff. of Danielle Quinlan Ex. 1. Host eventually produced Ms. Joy's personnel file to Plaintiff's counsel on December 8, 2020, after Ms. Joy had filed suit. Def.'s SMF ¶ 99.

Meanwhile, between March 18, 2020 and April 1, 2020, Host furloughed Ms. Joy and all but four of its other employees at the Portland Jetport because of the COVID-19 pandemic. Def.'s SMF ¶¶ 100–01. By the end of October of 2020, Linda Bean's, which was operating on a reduced schedule, had only recalled four servers and bartenders. Def.'s SMF ¶ 103. Host says that it recalled employees based on seniority and the needs of the business, but two of the Linda Bean's employees who were recalled from the furlough had less seniority than Ms. Joy. Def.'s SMF ¶ 105. At some point, Ms. Joy had a phone conversation with Mr. Rappazzo in which she asked

---

[4]      The parties also tussle over Host's counsel's candor regarding the FMLA paperwork. The Plaintiff claims that the authorization form for the release of her mother's medical information was missing from Ms. Joy's personnel file, was not produced by Host during discovery, and was omitted from the rest of the FMLA paperwork that Host's counsel introduced during the Plaintiff's deposition. Pl.'s ASMF ¶ 107. Host does not effectively deny these statements.

him if he expected business to pick up so he would put her back on the schedule, to which Mr. Rappazzo responded: "Well I don't know, I heard you were suing us." Pl.'s ASMF ¶ 113.[5] Host laid off all employees who were not recalled by the end of October of 2020. Def.'s SMF ¶ 106.

Ms. Joy filed her lawsuit against Host in state court in August of 2020. Compl. (ECF No. 1-1). She brings both interference and retaliation claims under Maine's family medical leave law and a claim for violation of Maine's personnel file law. Compl. ¶¶ 39–60. Host removed the case to federal court and subsequently filed its motion for summary judgment on all Ms. Joy's claims. Notice of Removal (ECF No. 1); Mot. for Summ. J. (ECF No. 70).

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence 'is such that a reasonable jury could resolve the point in the favor of the non-moving party . . . .' " *Taite v. Bridgewater State Univ., Bd. of Trs.*, 999 F.3d 86, 93 (1st Cir. 2021) (quoting *Ellis v. Fid. Mgmt. Tr. Co.*, 883 F.3d 1, 7 (1st Cir. 2018)). "[A]nd a fact is 'material' if it 'has the potential

---

[5]     Host purportedly denies this statement, but its response and citations merely go to the timing of Mr. Rappazzo's comment—whether before or during the furlough—not to a denial of the comment being said. Host claims it is "an impossibility" for Mr. Rappazzo to have known about Ms. Joy's lawsuit in early 2020 because the complaint wasn't filed until August. That argument is unavailing. In her request for Ms. Joy's personnel file on March 11, 2020, counsel for Ms. Joy notified Host of its obligation to preserve all documents relating to Ms. Joy's employment that may be "relevant in future litigation." Aff. of Danielle Quinlan Ex. 1 (ECF No. 76-16). Thus, Host would have been aware of the anticipated lawsuit when it received the preservation letter in early 2020, even though the complaint was not filed until later.

of affecting the outcome of the case.' " *Id.* (quoting *Pérez-Cordero v. Wal-Mart P.R., Inc.*, 656 F.3d 19, 25 (1st Cir. 2011)). The party moving for summary judgment bears the initial burden of showing that no such dispute exists. *Feliciano-Muñoz v. Rebarber-Ocasio*, 970 F.3d 53, 62 (1st Cir. 2020). Once it does so, the burden shifts to the nonmoving party to respond "with sufficient evidence to allow a reasonable jury to find in its favor with respect to each issue on which it has the burden of proof." *Id.* (internal quotation marks omitted).

In reviewing a motion for summary judgment, I must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *EdgePoint Cap. Holdings, LLC v. Apothecare Pharmacy, LLC*, 6 F.4th 50, 57 (1st Cir. 2021). But I am "not obliged either 'to draw unreasonable inferences or credit bald assertions or empty conclusions.' " *Theriault v. Genesis HealthCare LLC*, 890 F.3d 342, 348 (1st Cir. 2018) (quoting *Cabán Hernández v. Philip Morris USA, Inc.*, 486 F.3d 1, 8 (1st Cir. 2007)). "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Henry v. United Bank*, 686 F.3d 50, 54 (1st Cir. 2012) (quoting *Hodgens v. Gen. Dynamics Corp.,* 144 F.3d 151, 158 (1st Cir. 1998)).

## DISCUSSION

## I.    Interference with the Plaintiff's Maine Family Medical Leave Rights

The Plaintiff has alleged that she was eligible and qualified for leave under Maine's Family Medical Leave Requirements statutes, 26 M.R.S. §§ 843–48 ("**Maine FML**"), and that Host interfered with her rights under the Maine FML law by failing

to give her notice of her right to take medical leave and by firing her. Compl. ¶¶ 50, 53, 55. In its motion for summary judgment, Host asserts that the Plaintiff's claim fails as a matter of law because she cannot establish four of the five elements needed to make out a prima facie Maine FML case. Def.'s Mot. 4–6. Specifically, although Host admits that it is a covered employer, Host argues that the Plaintiff cannot show: (1) that Ms. Joy was an eligible employee; (2) that she qualified for benefits; (3) that she provided notice to Host; or that (4) Host denied her benefits to which she was entitled. Def.'s Mot. 4–6, 6 n.5. The Plaintiff counters that she meets the notice requirement because Host knew that Ms. Joy's family caretaker obligations prevented her from working on occasion. Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. ("**Pl.'s Opp'n**) 3–5 (ECF No. 77). She further argues that Host interfered with her Maine FML rights by reducing her hours and making her requested intermittent leave contingent on Host receiving supplemental documentation in the form of medical records relating to Ms. Joy's mother's medical condition. Pl.'s Opp'n 5–7.

Under the Maine FML law, an "employee who has been employed by the same employer for 12 consecutive months is entitled to up to 10 work weeks of family medical leave." 26 M.R.S. § 844(1). Family medical leave means, among other things, leave requested by an employee for a parent with a serious health condition. *Id.* § 843(4). An employee may request the family medical leave in the form of intermittent leave or a reduced schedule. *Id.* § 844(3). "The employer may require certification from a physician to verify the amount of leave requested by the employee." *Id.* § 844(1)(B). But "[t]he employer may not interfere with, restrain or

deny the exercise of or the attempt to exercise any right provided by [Maine FML law]." *Id.* § 847(1).

"At its core, a [Maine FML] interference claim confronts an employer's restraint on or denial of an employee's 'right to an entitlement'; . . . the issue is 'simply whether the employer provided its employee the benefits to which he was entitled.' " *Bailey v. Dal Glob. Servs. LLC*, No. 1:17-cv-00490-LEW, 2019 WL 3414386, at *8 (D. Me. July 29, 2019) (first quoting *Hodgens*, 144 F.3d at 159; then quoting *Carrero-Ojeda v. Autoridad de Energía Eléctrica*, 755 F.3d 711, 722 (1st Cir. 2014)). "No showing as to employer intent is required." *Paraskevopoulos v. Cent. Me. Med. Ctr.*, No. 2:17-cv-00166-JAW, 2019 WL 3767462, at *15 (D. Me. Aug. 9, 2019) (citation omitted), *R. & R. aff'd by* 2019 WL 4673182.  Interfering with the exercise of an employee's rights may also include an employer "discouraging an employee from using [FMLA] leave" to which the employee is entitled or reducing hours available to work in order to avoid employee eligibility. *Domenichetti v. Premier Educ. Grp., LP*, No. 12-cv-11311-IT, 2015 WL 58630, at *8 (D. Mass. Jan. 5, 2015).

### A.   Plaintiff's Claims of Interference in 2019

Although there is a factual dispute about the precise date that Ms. Joy began working for Host, the parties agree that Ms. Joy was eligible for leave under the Maine FML law as of February 2020. *See* Def.'s Mot. 2; Pl.'s Opp'n 5. The parties spill considerable ink about when Ms. Joy was scheduled to work, when she actually worked, and why she did not work on certain days, but the events of 2019 are not

11

particularly relevant to her Maine FML interference claim.[6] There is no evidence that during 2019, Host discouraged Ms. Joy from exercising her leave rights once she became eligible or that they reduced her hours so that she would not become eligible. *Cf. Dressler v. Cmty. Serv. Commc'ns, Inc.*, 275 F. Supp. 2d 17, 23 (D. Me. 2003) ("[I]nterference includes . . . discouraging an employee from using [FMLA] leave."); *Paraskevopoulos*, 2019 WL 3767462, at *15 (summary judgment denied where reasonable juror could find that defendant interfered with FMLA and Maine FML rights by "discouraging and preventing him from making such requests").

## B.    Plaintiff's Claims of Interference in 2020

On February 25, 2020, after Ms. Joy became eligible for Maine FML leave, she asked Host's human resources specialist for any documents she needed for intermittent FMLA leave to care for her mother. Joy Ex. 15. In response, Host immediately sent Ms. Joy "the necessary certification forms," which consisted of two documents: a certification of healthcare provider and an authorization for release of medical information. Def.'s Mot. 10. Host argues that the Plaintiff's interference claim fails as a matter of law because Ms. Joy never completed the certification that Host requested. Def.'s Mot. 6. The Plaintiff explains that she did not submit the requested paperwork because the release of medical information was "beyond the scope of information that is permissible for an employer to request." Pl.'s Opp'n 6–7.

---

[6]    Ms. Joy does not bring an FMLA claim and has not alleged that Host reduced her hours in order to prevent her from qualifying under the FMLA, which requires an employee to work 1,250 hours in the preceding year to be eligible.

Although this case was brought under the Maine FML law, both sides point to the federal FMLA for guidance. *See, e.g., Morin v. Hannaford Bros. Co., LLC,* No. 1:17-cv-50-GZS, 2018 WL 2746570, at *13 (D. Me. June 7, 2018) (looking to the FMLA when analyzing Maine FML claims). The FMLA provides that an employer "may require that a request for leave . . . be supported by a certification issued by the health care provider of the . . . parent of the employee." 29 U.S.C. § 2613(a). That certification "shall be sufficient" under the FMLA if it states, in relevant part: (1) the date the serious health condition began; (2) the condition's probable duration; (3) the appropriate medical facts within the health care provider's knowledge regarding the condition; (4) a statement that the employee is needed to care for the family member with a serious medical condition and an estimate of the amount of time needed; and (5) a statement that the employee's intermittent leave is necessary or will assist in the parent's recovery, and the expected duration and schedule of the intermittent leave. 29 U.S.C. § 2613(b). The regulations to the FMLA make clear that "no information may be required beyond that specified." 29 C.F.R. § 825.306(b). And the FMLA regulations provide: "While an employee may choose to comply with the certification requirement by providing the employer with an authorization, release, or waiver allowing the employer to communicate directly with the health care provider of the employee or his or her covered family member, *the employee may not be required to provide such an authorization, release, or waiver*." *Id.* § 825.306(e) (emphasis added).

The Maine FML law is far less specific about its certification requirement. It simply permits the employer to "require certification from a physician to verify the *amount* of leave requested by the employee." 26 M.R.S. § 844(1)(B) (emphasis added). If anything, the Maine FML is narrower than the FMLA. Nothing in the Maine statute suggests that Ms. Joy's right to take leave could be conditioned upon her completion of an authorization for release of medical information.

Host admits that a broad medical release was one of the two documents sent to Ms. Joy after she requested "any forms or documents [she] may need for intermittent FMLA . . . ." Joy Ex. 15; *see* Dep. of Tammy Szeluga 66:15–18 (ECF No. 64-32); Def.'s Reply 7, n.8 (ECF No. 94). And there is nothing in the record that suggests that Host explained to Ms. Joy that the medical release form was optional, or that it was an alternative to the standard certification form, rather than an additional part of the certification form. Most employees in this situation would think that they would need to submit both a completed certification form *and* the release to be granted leave. Indeed, Host's briefing characterizes the documents sent to Ms. Joy as "the necessary certification forms." Def.'s Mot. 10.

It appears from the briefing that Host may believe that it can require such a broad medical release under the Maine FML law. In its Reply, Host accuses the Plaintiff of "pure sophistry" and argues that she is asserting "a right to privacy under the FMLA." Def.'s Reply 7. But Host fails to engage with the Plaintiff's facts that reflect that the release form was provided to Ms. Joy with no explanation that it was not required. Nor does Host contend with the law to the extent that Maine's physician

certification provision actually appears to be narrower than the FMLA's. On this record, a reasonable juror could find that Host required a broad release of Ms. Joy's mother's medical records as a precondition for leave under the Maine FML law, and a reasonable juror could conclude that the requirement constituted an attempt to discourage Ms. Joy from applying for family medical leave. The Plaintiff's interference claim under the Maine FML law accordingly survives.

## II.   Retaliation under Maine FML Law

The Plaintiff also alleges that, because she inquired about taking Maine FML leave, Host retaliated against her by not scheduling her, by refusing to reinstate her post-pandemic after the Portland Jetport restaurants reopened, and by lying to the Maine Department of Labor to deny her unemployment benefits. Compl. ¶¶ 39–48. Host argues that it is entitled to summary judgment because the Plaintiff cannot establish that she availed herself of a protected right or that there is a causal connection between protected activity and the adverse employment action taken by Host against Ms. Joy.[7] Def.'s Mot. 10–12.

Under the Maine FML law, "[t]he employer may not discharge, fine, suspend, expel, discipline or in any other manner discriminate against any employee for exercising any right provided by [the Maine FML law]." 26 M.R.S. § 847(2). "To state a prima facie case of retaliation, a plaintiff must show (1) that she availed herself of

---

[7]    Host argues that the familiar *McDonnell Douglas* burden-shifting framework applies to claims under the FMLA. Def.'s Mot. 10–11. This burden-shifting device, however, is not used for claims arising under the Maine FML law. *See Brady v. Cumberland Cnty.*, 2015 ME 143, ¶ 39, 126 A.3d 1145 (holding that applying "the *McDonnell Douglas* framework to the summary judgment stage of [a Whistleblower's Protection Act] retaliation case[ ] . . . is unnecessary and only serves to complicate a proper analysis of the employee's claim"); *Cote v. T-Mobile USA, Inc.*, 168 F. Supp. 3d 313, 337 (D. Me. 2016) (noting that *Brady's* reasoning would apply to claims under the Maine FML law).

a protected right under the FMLA, (2) that she was adversely affected by an employment decision, and (3) that there was a causal connection between the protected conduct and the adverse employment action." *Dorr v. Woodlands Senior Living of Brewer, LLC*, No. 1:15-cv-00092-GZS, 2016 WL 3566202, at *14 (D. Me. June 27, 2016), *R. & R. affirmed by* 2016 WL 4250254; *see also Bailey*, 2019 WL 3414386, at *4 ("[T]he plaintiff must have experienced some form of adverse employment action causally connected with . . . his protected action."). The adverse employment action must be "motivated at least in part by protected activity." *Brady v. Cumberland Cnty.*, 2015 ME 143, ¶ 38, 126 A.3d 1145; *see Hodgens*, 144 F.3d at 160 ("[T]he employer's motive is relevant").

Host contends that Ms. Joy has failed to establish the first and third elements of a prima facie retaliation action. Def.'s Mot. 11.

## A. Protected Activity

Host maintains that Ms. Joy cannot establish that she availed herself of a protected right because, having not filled out the leave paperwork sent to her, she was not entitled to family medical leave in the first place.[8] Def.'s Mot. 11. The parties

---

[8]    The First Circuit has not definitively decided whether an employee who is not entitled to FMLA leave can still maintain a retaliation claim. *See McArdle v. Town of Dracut/Dracut Pub. Schs.*, 732 F.3d 29, 35–36 (1st Cir. 2013) ("[I]t is not clear that one not entitled to take FMLA leave 'avails himself of a protected right' when requesting to take such leave. The case law is both split and not fully developed regarding such an argument. . . . We are not convinced that an employee who is ineligible for FMLA leave can never bring a retaliation claim."); *Carrero-Ojeda v. Autoridad de Energía Eléctrica*, 755 F.3d 711, 719 (1st Cir. 2014) (assuming at motion to dismiss stage that the plaintiff availed herself of her FMLA rights "when she attempted to 'activate' leave"). The Maine Law Court has not spoken to the issue either with respect to the Maine Family Medical Leave Requirements law.

    The Defendant's argument hinges on its assertion that Ms. Joy did not respond after being sent "the appropriate documentation." Def.'s Mot. 11. Because, on the record before me, there is at least a dispute of fact as to whether Host required the release, and because it appears that an employer

do not dispute that Ms. Joy requested medical leave forms in February of 2020 after she became qualified under the Maine FML law. This constitutes protected activity and makes out the first element of her prima facie case. *See Hodgens*, 144 F.3d at 165 (noting that the prima facie burden for a retaliation claim is "quite easy to meet").

### B.   Causal Connection

Host also argues that the Plaintiff cannot demonstrate a causal connection between Ms. Joy asserting a protected right and any adverse employment action. Def.'s Mot. 12–13. Instead, Host offers nondiscriminatory reasons for why it reduced Ms. Joy's hours and then laid her off—namely Ms. Joy's lack of availability, a "significant decline in business from October 2019 through March 2020," and the COVID-19 pandemic. Def.'s Mot. 12–13. Ms. Joy counters that she has established causation by the temporal proximity between her protected activity and Host's adverse employment actions and by admissions from Host management as to why Ms. Joy was removed from the Linda Bean's schedule. Pl.'s Opp'n 11–12.

" 'Very close' temporal proximity between protected activity and an adverse employment action can satisfy a plaintiff's burden of showing causal connection." *Sánchez-Rodríguez v. AT&T Mobility P.R., Inc.*, 673 F.3d 1, 15 (1st Cir. 2012) (quoting *Calero–Cerezo v. U.S. Dep't of Just.*, 355 F.3d 6, 25 (1st Cir. 2004)); *see also Wyatt v. City of Boston*, 35 F.3d 13, 16 (1st Cir. 1994) ("One way of showing causation is by establishing that the employer's knowledge of the protected activity was close in time to the employer's adverse action."). But, although "temporal

---

cannot require a medical release, I consider Ms. Joy's request for FMLA forms to be protected activity regardless of whether she went on to request the leave and ultimately was entitled to it.

proximity *may* give rise to a suggestion of retaliation, that suggestion is not necessarily conclusive." *Hodgens,* 144 F.3d at 170 (internal citation and quotation marks omitted).

Another way of showing a causal connection "is to show 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and . . . infer that the employer did not act for the asserted non-discriminatory reasons.' " *Id.* at 168 (quoting *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir. 1997)). "Statements by supervisors carrying the inference that the supervisor harbored animus against protected classes of people or conduct are clearly probative of pretext . . . even if that inference is not the only one that could be drawn from the comment." *Id.* at 171; *cf. Colburn v. Parker Hannifin/Nichols Portland Div.*, 429 F.3d 325, 338 (1st Cir. 2005) (finding no pretext where "[t]here is no statement by any decisionmaker evidencing retaliatory motive").

There are several comments made by Ms. Joy's supervisors that could support a finding of retaliatory motive. First, Ms. Joy contends that in December of 2019, Mr. Rappazzo said to another Linda Bean's employee who reported scheduling issues: "Now, now, now, Pauline, just because there's one bad apple doesn't mean we all have to be bad apples" while glaring at Ms. Joy. Pl.'s ASMF ¶ 82.[9] Further, at some point

---

[9]     In addition to denying that Mr. Rappazzo ever made this comment, Host moves to strike the Plaintiff's statement of material fact on the grounds that it is inadmissible hearsay. It is doubtful that Ms. Joy would offer the statement for the truth of the matter asserted. I consider it to show Mr. Rappazzo's state of mind and decline to strike it.

either before or during the 2020 pandemic-caused furlough, Ms. Joy had a phone conversation with Mr. Rappazzo in which she asked him if he expected business to pick up so she would be scheduled to work again, to which Mr. Rappazzo responded: "Well I don't know, I heard you were suing us." Pl.'s ASMF ¶ 113. It is for a jury at trial—not a judge on summary judgment—to assess the credibility of those involved and determine if these statements were made and what they meant. A reasonable factfinder could infer that Ms. Joy was terminated at least in part because of her attempts to exercise her Maine FML rights.

Finally, Host both denies it reduced Ms. Joy's hours and offers shifting reasons for the reductions. These inconsistencies are most obvious in errata sheets connected to Mr. Rappazzo's deposition, which Host cites repeatedly. In the errata sheets, Host makes twenty-five substantive changes, claims that Mr. Rappazzo's original answers were "incomplete" and/or "incorrect," and adds significant new information that contradicts the deposition. *See* Rappazzo Dep. Part 1 & Part 2 (ECF Nos. 64-34 & 64-41). I question whether using an errata sheet in this way—contradicting or elaborating on Mr. Rappazzo's earlier testimony to bolster their defenses to Ms. Joy's claims—is permissible under Fed. R. Civ. P. 30(e)(1), but it underscores the shifting rationale behind the adverse action. *See Godfried v. Ford Motor Co.*, No. 1:19-cv-00372-NT, 2022 WL 2869700, at *6 (D. Me. July 21, 2022) ("[M]ultiple courts have held that deploying an errata sheet to radically change deposition testimony without adequate explanation is improper.").

Viewing the record as a whole and drawing all inferences in Ms. Joy's favor, I find that she has produced evidence sufficient to generate a genuine issue of material fact on the elements of her claim for Maine FML retaliation.[10] How Ms. Joy's evidence of retaliatory motive weighs against Host's proffered legitimate reasons for reducing and then eliminating Ms. Joy's hours is necessarily left for the jury at trial. Accordingly, Host's motion for summary judgment on Ms. Joy's retaliation claim is denied.

## III. Maine Personnel File Law

Finally, the Plaintiff alleges that Host violated the Maine statute that gives employees the right to review their personnel file. The Maine statute provides:

> The employer shall, upon written request from an employee or former employee, provide the employee, former employee or duly authorized representative with an opportunity to review and copy the employee's personnel file if the employer has a personnel file for that employee. The reviews and copying must take place at the location where the personnel files are maintained and during normal office hours unless, at the employer's discretion, a more convenient time and location for the employee are arranged. In each calendar year, the employer shall provide, at no cost to the employee, one copy of the entire personnel file when requested by the employee or former employee and, when requested by the employee or former employee, one copy of all the material added to the personnel file after the copy of the entire file was provided. . . . Any employer who, following a request pursuant to this section, without good cause fails to provide an opportunity for review and copying of a personnel file, within 10 days of receipt of that request, is subject to a civil forfeiture of $25 for each day that a failure continues.

---

[10]     I would reach the same conclusion had I followed the *McDonnell Douglas* burden-shifting framework because Ms. Joy produced sufficient evidence to demonstrate "a trialworthy issue on whether [Host's] stated reason was but a pretext for retaliating against her" for exercising her protected right to leave. *Henry v. United Bank*, 686 F.3d 50, 56 (1st Cir. 2012); *see Hodgens*, 144 F.3d at 167 ("[W]here a plaintiff in a discrimination case makes out a prima facie case and the issue becomes whether the employer's stated nondiscriminatory reason is a pretext for discrimination, courts must be 'particularly cautious' about granting the employer's motion for summary judgment." (quoting *Stepanischen v. Merchs. Despatch Transp. Corp.*, 722 F.2d 922, 928 (1st Cir. 1983))).

> The total forfeiture may not exceed $500. An employee, former employee or the Department of Labor may bring an action in the District Court or the Superior Court for such equitable relief, including an injunction, as the court may consider to be necessary and proper. The employer may also be required to reimburse the employee . . . for costs of suit including a reasonable attorney's fee if the employee . . . receives a judgment in the employee's . . . favor . . . .

26 M.R.S. § 631. Host argues that the Plaintiff's claim fails as a matter of law because, on March 11, 2020, the Plaintiff's attorney asked for a copy of Ms. Joy's personnel file—rather than the opportunity to "review and copy" it—so the request was deficient and Host never denied Ms. Joy the access required under Maine law. Def.'s Mot. 17–18.

I am not persuaded by Host's argument that Ms. Joy's counsel is at fault for not using the magic words "review and copy." Counsel for Ms. Joy asked for "a complete copy of all documents that are considered part of [Ms. Joy's] personnel file pursuant to Maine law (26 M.R.S. § 631)." Aff. of Danielle Quinlan Ex. 1. I fail to see how that does not constitute a proper written request for the personnel file. I recognize that Judge Hornby recently examined § 631 and questioned whether a plaintiff properly requested access, citing a 1993 Maine Superior Court case that noted "[t]he law only requires that a person seeking access to their personnel file be given access to that file at the appropriate personnel office. There is no evidence that the defendants ever denied plaintiff access to his personnel file at defendants' offices as required by 26 M.R.S.A. § 631." *White v. Hewlett Packard Enter. Co.*, No. 2:17-cv-491-DBH, 2019 WL 2438780, at *5 (D. Me. June 11, 2019), *aff'd,* 985 F.3d 61 (1st Cir. 2021) (quoting *Richardson v. Town of Rangeley*, No. CV-92-81, 1993 Me. Super. LEXIS 109, at *8 (June 21, 1993)). But Judge Hornby went on to observe:

21

> This part of the statute may indeed need reworking for today's world where cloud-based digital records are replacing physical file folders located in a physical location, where employees work at home—sometimes remotely from any head office or regional office—and where worldwide companies like HP assign HR personnel for an entire country or region, or even outsource various HR responsibilities.

*Id.* (footnote omitted). Ultimately, Judge Hornby determined it was "unnecessary to address this perhaps anachronistic part of the statute" because the plaintiff in *White* "did ask for his personnel file" and the defendant "did send him materials," and what was at issue was only whether the file was complete. *Id.* at *6.

Here, Ms. Joy asked for a copy of her personnel file, which I read broadly as a request to obtain a copy, whether that meant being given an opportunity to access and copy the file herself or being provided with a copy made by Host. *See Dir. of Bureau of Lab. Standards v. Cormier*, 527 A.2d 1297, 1300 (Me. 1987) ("Remedial statutes should be liberally construed to further the beneficent purposes for which they are enacted.").[11] In response, Host should have given Ms. Joy's attorney the opportunity to review and copy the file at Host's offices (or, at the very least, stated in response what Host's counsel viewed as deficient in the request). Or they could simply have provided a copy of the file to her rather than go through the inconvenience of scheduling a review-and-copy visit. Host's undisputed failure to provide Ms. Joy's counsel with the opportunity to review and copy the personnel file within ten days violates § 631.

---

[11]   The wording of Ms. Joy's counsel's request is also distinguishable from the request made in *Richardson v. Town of Rangeley*, where the plaintiff's attorney asked "that he be *sent* a copy of plaintiff's personnel file." No. CV-92-81, 1993 Me. Super. LEXIS 109, at *8 (June 21, 1993) (emphasis added).

Because the Plaintiff admits that Host eventually produced Ms. Joy's personnel file, however, there is no injunctive relief left to grant under the statute. Def.'s SMF ¶ 99. And, although the Plaintiff asks for "civil forfeiture damages," there is "no private right of action" under § 631, and civil forfeiture penalties are only "collectible by the Maine Department of Labor." *Connolly v. Dorris*, No. 2:19-cv-00510-GZS, 2020 WL 3271935, at *5 (D. Me. June 17, 2020) (citing *Boylan v. Foster Carpenter Black & Co., LLP*, 2002 WL 1023514, at *1 (Me. Super. Ct. Apr. 16, 2002)), *R. & R. aff'd by* 2020 WL 4004796. The Plaintiff is, however, entitled to attorneys' fees and costs under the statute, reflecting the time and effort spent retrieving the personnel file. Therefore, the Defendant is not entitled to summary judgment on the Plaintiff's § 631 claim.

## CONCLUSION

For the reasons stated above, the motion for summary judgment is DENIED.


SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 28th day of September, 2022.